## THE STATE ex rel. J. P. BELL, Treasurer of State Hospital No. 1, Appellant, v. MARTIN YATES et al.

**Division One, November 30, 1910.**

1. **LIMITATIONS: Bond of Treasurer of State Asylum.** An action against the sureties on the bond of a treasurer of a state hospital is barred in three years. So that where Thomas, as treasurer of State Hospital Number 1 at Fulton, appropriated to his own use, in 1897 and 1898, money belonging to the hospital, a suit brought in 1905 against the sureties on his bond for either of those years, is barred by the three-year Statute of Limitations, under Sec. 1890, R. S. 1909, unless Thomas by fraudulent concealments prevented the discovery, by due diligence, of his conversion. The words "other officer" used in said statute, stating that an action "against a sheriff, coroner or other officer," etc., are broad enough to include such treasurer.

2. ———: ———: **Strict Interpretation.** The liability of a surety is not to be stretched by implication. If the contract of suretyship is unambiguous, his obligation is *strictissimi juris*. And that rule is to apply to the plea of limitations, for statutes of limitations are favored in modern law, and are liberally construed to further their beneficent purpose.

3. ———: ———: **Exception: Fraudulent Concealment.** The statute itself provides an exception to the running of the limitation against an action on a treasurer's official bond. If there be fraudulent concealments, or any other improper act preventing the discovery, by the exercise of due diligence, of the facts constituting the cause of action, then the statute does not begin to run in favor of the sureties until the officer's fraudulent conversion is disclosed. But if the referee finds that there was a lack of diligence on the part of the board of managers of the state hospital to discover the treasurer's fraudulent conversion of its funds, and there is substantial evidence to support his findings, the action on the sureties' bond is barred in three years after the actual conversion.

4. ———: ———: ———: ———: **Complacent Confidence.** Where the duty is put upon the board of managers and the superintendent of a state hospital to protect the State against a corrupt use or loss of its money, and they have among the records in their own keeping proof that the treasurer is receiving money from month to month which he is not accounting for, their failure to discover his stealings does not prevent

the running of the Statute of Limitations in favor of the sureties on the treasurer's bond. Implicit confidence in the treasurer's integrity is no excuse. Complacent acquiescence in the truthfulness of his reports, is negligence, not diligence.

5. ———: ———: ———: ———: **Not Pleaded.** A party relying on the presence of fraudulent concealment to prevent the running of the Statute of Limitations against the action, must plead it; but if the case was tried on the theory that the pleadings embraced that issue, it will on appeal be disposed of upon the same theory.

Appeal from Callaway Circuit Court.—*Hon. Alex. H. Waller,* Judge.

AFFIRMED.

*Elliott W. Major,* Attorney-General, for the State; *North T. Gentry* of counsel for appellant.

The Statute of Limitations is not a defense in this case, for the reason that there was fraudulent concealment by the treasurer, W. D. Thomas, of the plaintiff's cause of action. At the monthly meetings of the board of managers of the State Hospital for the Insane, Mr. Thomas presented his written reports, which purported to show all of the money that he had received, from whom he had received it, the date when it was received and to whom payments had been made. By comparing these statements, or settlements, with the treasurer's book, the board of managers concluded that his settlements were correct, as his book and his statement each time agreed the one with the other. Having confidence in Thomas, believing him to be thoroughly reliable, and never having heard of any complaint against him, the gentlemen composing this board had no reason to doubt the truth of his statements, nor the correctness of the treasurer's book which was kept by him with the assistance of a lady in his office. The members of this board were not experienced accountants—one of them was a lawyer, one an editor, and the others men of occupations different from that of a

bookkeeper. While they all understood bookkeeping to some extent, they did not understand the investigating or ferreting out of errors in accounts similar to those made by Thomas. The Statute of Limitations will not run against the plaintiff, where the defendant has fraudulently concealed from the plaintiff either the cause of action, or information regarding the plaintiff's rights. Shelby County v. Bragg, 135 Mo. 298; 2 Wood on Limitations, p. 702; Hoffman v. Parry, 23 Mo. App. 28; Bispham on Equity, sec. 203; Bank v. Thayer, 184 Mo. 95; Prewitt v. Prewitt, 183 Mo. 685; Hunter v. Hunter, 50 Mo. 445; Bank v. Perry, 144 Mass. 313; 25 Cyc. 1185-1193; 19 Am. and Eng. Ency. Law (2 Ed.), 243; Foley v. Jones, 52 Mo. 67; State ex rel. v. Hawkins, 103 Mo. App. 251; Bowman v. Sanborn, 18 N. H. 205; Aultman v. Adams, 35 Mo. App. 503; Aultman v. Loring, 76 Mo. App. 66; Kilbourne v. Sunderland, 130 U. S. 505; Dye v. Bowling, 82 Mo. 587; Carder v. Primm, 52 Mo. App. 102; Fisher v. Tuller, 122 Ind. 31. And all of the authorities hold that the concealment of facts and resort to artifice to prevent the discovery of the truth constitutes such fraudulent conduct as to prevent the running of the Statute of Limitations. Gibson v. Cunningham, 14 Mo. 131; Cahn v. Reid, 18 Mo. App. 150; 14 Am. and Eng. Ency. Law, 38; 25 Cyc. 1192. After a careful examination of the record, there can be no escape from the conclusion that fraud was practiced upon the members of the board of managers by Thomas, and that the board was deceived thereby. So great were his misrepresentations that it was impossible for the board to ascertain the true condition of his accounts. It took Mr. Simpson, an experienced accountant, several months to go through the treasurer's book, which he said was unreliable; and then he found it necessary to carefully go through the accounts of Thomas at three banks in Fulton, also the secretary's book, and to correspond with county clerks and the guardians of patients in different

counties in the State.  Even then the referee did not concur in all of the findings of the accountant; but after many months of investigation and research, that officer made his findings, and the trial court adopted the same as showing the exact amount of the shortage of Thomas.

*W. M. Williams* and *Harris & Hay* for respondents.

(1) A party seeking to avoid the bar of the Statute of Limitations on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power he will be held to have known it.  Concealment by mere silence is not enough.  There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.  There must be reasonable diligence; and the means of knowledge is the same thing in effect as knowledge itself. Shelby County v. Bragg, 135 Mo. 291; Wood v. Carpenter, 101 U. S. 141; Comrs. v. Lods, 36 N. E. 772; Comrs. v. Kyle, 37 N. E. 279; Callan v. Callan, 175 Mo. 346.  In order to avail himself of the rule as to concealed fraud, to excuse delay in bringing an action, the bill or complaint should set forth the nature of the transaction fully, and also the acts of concealment and the time of discovery.  State v. Giles, 52 Ind. 356.  Wood v. Carpenter, 101 U. S. 141; Callan v. Callan, 175 Mo. 346; Mather v. Rogers, 68 N. W. 700.  (2) The exception applies only where the party claiming its benefit has used due diligence.  The books kept by the secretary of the board and under its direction and supervision would at all times have shown to the most casual observer the discrepancies now complained of.  Statutes of Limitation are favored in the law and cannot be avoided unless the party seeking to do so brings himself clearly within some exception.  Shelby County v. Bragg, 135 Mo. 291; Callan v. Callan, 175 Mo. 346; State ex rel. v. Hawkins, 103 Mo. App. 251.  One seeking to avoid the bar of the Statute of Limitations be-

cause of the fraud of the defendant must allege and show that he used due diligence to detect it, and if he had the means of discovery in his hands he will be held to have known it. Shelby County v. Bragg, 135 Mo. 291; State ex rel. v. Hawkins, 103 Mo. App. 251. Where the right depends on recorded instruments, there must be such misrepresentations as to prevent an examination of the records. Haynie v. Hall, 5 Humph. (Tenn.) 220. Nor will equity interfere in a case where the party seeking relief might by the exercise of proper diligence have discovered the fraud. Sturgis v. Morse, 24 Beav. 541; Wood on Limitations (3 Ed.), secs. 275, 653; Wynne v. Cornelison, 52 Ind. 312; Township v. French, 40 Ia. 601; Miller v. Powers, 119 Ind. 79; Stone v. Brown, 116 Ind. 78. And if the acts which are claimed to constitute the fraud are evidenced by public records, it cannot be claimed that there was such a concealment as would prevent the operation of the statutes. Wood on Limitations, sec. 276, p. 661; Morris v. Haggan, 136 U. S. 386. The rule that in cases of fraud the Statute of Limitations begins to run only from the discovery of the fraud does not apply if the party affected by the fraud might, with ordinary and reasonable diligence, have discovered it. Vigus v. O'Bannon, 118 Ill. 334; Smith v. Blackly, 198 Pa. 173.

LAMM, P. J.—The State sues in the circuit court of Callaway county, at the relation and to the use of Bell, treasurer of State Hospital No. 1, on August 5, 1905, on the bond of an absconding ex-treasurer, Thomas, to recover $7721.06 alleged to have been wrongfully converted by him to his own use of the moneys of the hospital in his hands. Defendants are Thomas's sureties on his official bond in the penal sum of $24,000, dated April 13, 1897, the condition of the bond running:

"Whereas, the said William D. Thomas was, on the 12th day of April, 1897, duly appointed to the office of

treasurer of the State Lunatic Asylum No. 1, at Fulton (Missouri), and has been duly commissioned. Now, therefore, if the said William D. Thomas shall faithfully perform all the duties of said office, shall faithfully pay over and account for all moneys, property and effects that may come into his possession as such officer, then this obligation to be void, otherwise to remain in full force and effect.''

The breaches are that Thomas, at divers times from April 17, 1897, to March 17, 1899, collected moneys due said hospital from various sources, aggregating said sum, which he failed to report to its board of managers or the State Auditor, and failed to pay into the State Treasury, or otherwise lawfully account for. Judgment was asked for the penalty of the bond with award of execution for $7721.06 damages.

The sureties' answer was a general denial, plus a plea of the three-years' Statute of Limitations. [Sec. 1890, R. S. 1909.]

Sent to a referee, E. W. Hinton, Esq., of the Boone Bar, the order of reference gave him power ''to take evidence, try and decide the law and the fact, and make report thereof.'' At a certain time (having duly qualified and heard the case) he made report, accompanied by the evidence taken. Among his findings, one was that Thomas received and appropriated to his own use several thousand dollars of the funds of the hospital— his defalcation divided between 1897 and 1898. Further, that the board of managers did not exercise ordinary care ''in examining the accounts and settlements of W. D. Thomas as treasurer of said asylum, and that by the exercise of ordinary care in the examination of such accounts and in comparing the same with the books of the secretary and the treasurer's duplicate receipts on file with him, such board of managers could have discovered many of the discrepancies in the treasurer's accounts, and that he was not reporting and accounting for all funds received.''

In conclusions of law on that finding of fact the referee reported, *inter alia*, that: "The action is barred by the three-years Statute of Limitations." The Attorney-General appeared *ex-officio* and joined in exceptions to the report—among them, the following:

"6. The referee erred in finding that the plaintiff's cause of action is barred by the Statute of Limitations. . . .

"8. The referee erred in finding that the board of managers of State Lunatic Asylum No. 1 at Fulton could have discovered many of the discrepancies in the accounts of W. D. Thomas, treasurer as aforesaid, by the exercise of ordinary care.

"9. The referee erred in finding that the failure of the board of managers of State Lunatic Asylum No. 1 at Fulton, to discover the discrepancies aforesaid, did not arrest the running of the Statute of Limitations."

The exceptions were overruled, the report was approved and confirmed, judgment for defendants following. On due steps the cause comes here on the State's appeal.

We put aside all exceptions to the referee's report, save the above, because our learned Attorney-General and his learned co-counsel (as we read the State's brief) hang the case on appeal on a single thread, viz., the finding relating to the Statute of Limitations and on error below in the ruling thereon. This eliminates several exceptions, for example:

There was an admission made that on March 10, 1896, the board of hospital managers amended their by-laws so that the term of office of the treasurer became one year instead of two as theretofore. Thomas, first elected in April, 1897, was elected for another term of one year on May 10, 1898. There was no evidence showing a new bond given for the second term. On such record the referee found, as a conclusion of law, that the bond in suit did not cover defalcations during

the second term. For defendants it is argued that such conclusion was sound. But, as we see it, the case breaks on a vital point before that one is reached in logical order.

So, contention was made that the general language of the petition did not properly allege breaches of the bond. The learned referee so found. The point is elaborately briefed by defendants' counsel, but, however inviting the field, its exploration will not be attempted in this case, but the question will be reserved to be determined in some case hinging on the proposition.

Attending to the main question anent the Statute of Limitations, we all agree it was well ruled below. Because:

(a). Section 1890, Revised Statutes 1909, ordains that an action "against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the non-payment of money collected upon an execution or otherwise," shall be commenced within three years. This section announces the rule of limitations applicable to Thomas's sureties. Its exposition in State ex rel. v. Harter, 188 Mo. l. c. 528, *et seq.*, removes the question from the realm of debate by holding that the doctrine of *ejusdem generis* does not apply to "other officer," and that such term was broad enough to include all persons measuring up to the definition of a statutory officer—in that case the treasurer of a school board. Confessedly, Thomas was such person.

(b). Assuming a given contract of suretyship is unambiguous, then the obligation of the surety is *strictissimi juris*. His liability may not be stretched by implication.

Not only so, but statutes of limitations are favored in modern law and are liberally construed to further

their beneficent purpose. [Wetmore v. Crouch, 188 Mo. l. c. 652, *et seq.*; Shelby County v. Bragg, 135 Mo. l. c. 300.] Says Mr. Justice SWAYNE in Wood v. Carpenter, 101 U. S. l. c. 139, speaking for the whole court: "Statutes of limitations are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together."

(c). Keeping in mind paragraphs (a) and (b), we come to a closer view of the case, viz.: There is a main exception to the running of the statute. If there be fraudulent concealments, "any improper act," preventing the discovery of the facts constituting the cause of action by the exercise of due diligence, then the statute does not begin to run until the fraud is discovered and the facts constituting the cause of action, theretofore concealed by the fraud and improper acts, come to light. This independent equitable principle of use in the administration of the law of limitations is somewhat shadowed forth in Revised Statutes 1909, section 1905, reading: "If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." See section 1889, Revised Statutes 1909, where the same idea is expressed as controlling actions for fraud.

The case is submitted on the theory that the three years statute ran, unless the State brings itself within

the above exception; for it appears without any dispute that the moneys converted came into Thomas's official hands and were misappropriated by him (that is, the cause of action accrued) more than three years before the commencement of the action. On this phase of the case defendants contend there was no diligence used to discover the defalcation. *Contra,* the State contends that discovery was prevented by the improper acts and fraudulent concealments of Thomas, and that the board of managers of Hospital No. 1 were diligent in the premises. The referee found a lack of diligence. From that finding, as a postulate, he drew the conclusion that the three years' statute was a bar. His conclusion is sound if his premises be sound. Therefore we have nothing to do but to see if there was substantial evidence showing a lack of diligence. This, because (whatever the rule in equity) the finding of fact by a referee in a law case fills the office of a special verdict, and must be judged of by the rules pertaining to verdicts. Hence, if there is substantial evidence to support the finding, an appellate court will no more meddle with the weight of it than with the weight of the evidence in a jury trial.

Thus, in McGregor v. Construction Co., 188 Mo. l. c. 621, it was said: "The findings of fact by a referee in a case at law stand upon the same footing, in an appellate court, as the verdict of the jury. It is not the practice of this court to review a finding of fact by a referee or jury in an action at law. This court looks to the facts, in such a case, only far enough to ascertain whether there is any substantial testimony to support the finding, and where such is the case it does not interfere with a finding of fact."

The McGregor case but announces a settled doctrine, needing no new exposition. See, for example, Vogt v. Butler, 105 Mo. 479; Bissell v. Warde, 129 Mo. 439; Dunlap v. Elks' Social Club, 25 Mo. App. 180, and

cases cited; Grocery Co. v. Fidelity and Guaranty Co., 130 Mo. App. 421, and cases cited.

Attending to the testimony, we shall not cumber the opinion with it. It tends to show that Thomas from month to month reported his pretended receipts and disbursements to the board of managers, transcribing the account from his own books as treasurer and presenting receipts from the State Treasurer showing he had deposited with that official such moneys as his own report and the books showed he had received. The board of managers accepted his report as true and, finding the receipts of the State Treasurer to agree with the amounts reported by Thomas, looked no further and allowed Thomas's peculations to continue systematically during 1897 and 1898. Their excuse for this was that they had implicit confidence in his integrity and took no steps to check up his accounts to see if he had charged himself with all funds coming into his hands. At that very time facts and documents (duplicate receipts) showing systematic and heavy stealing were spread on the very books of the hospital and were in its files, subject to their command for inspection and use. Their bookkeeper kept a set of books as did the treasurer. This bookkeeper was secretary of the board and attended its meetings. It was the duty of the superintendent of the hospital to be present at the meetings of the board of managers and to make reports to the board. The books kept by the bookkeeper show that Thomas had received from time to time many thousands of dollars he was, in some instances, not accounting for, and, in others, was accounting for long after their receipt. The superintendent, under the evidence, as well as the bookkeeper and ex-officio secretary of the board, had handled most of the warrants, checks and drafts evidencing the moneys stolen, and, as said, these amounts appeared on the books of the bookkeeper, and yet neither the bookkeeper nor the superintendent was asked to investigate the state of

Thomas's accounts as spread on the bookkeeper's books, nor did the board investigate the bookkeeper's books and compare them with Thomas's to see if they tallied.

It is the duty of the superintendent to constantly reside in the hospital (R. S. 1899, sec. 4849); the treasurer is an officer of the hospital, but need not reside therein *(Ibid)*; before entering on his duties, the superintendent makes oath "that he will diligently, faithfully and impartially discharge all the duties required of him by law" (R. S. 1899, sec. 4854); it is made the duty of the superintendent to see to it that the treasurer faithfully and diligently discharges his duties (R. S. 1899, sec. 4855); other provisions of the statute (Art. 1, chap. 72, R. S. 1899) contemplate that the superintendent, who is the ranking executive head of the hospital, should exercise active supervision over the accounts. Turning to article 1, chapter 118, Revised Statutes 1899, we see that the board of managers severally take an oath of office requiring each to attend the meetings of the board and "faithfully guard the interest and welfare of the inmates, . . . and will protect the State against any extravagant or corrupt use of the State's money or property . . . . " [sec. 7702.] In section 7703, the bookkeeper is made the secretary of the board. By section 7709, it is made the duty of the board through its proper officers to report to the General Assembly, under oath, not only disbursements, but the amounts received from the State and other sources for the maintenance of the hospital. By section 7807 it is made unlawful for the superintendent to receive any person as an inmate, unless the sum required by law for the support of such inmate has been paid into its treasury, thereby showing that the superintendent has an active duty to perform in that behalf.

The statutory scheme for the management of the hospital shows in its entirety that its board

act, *inter alia,* as auditors, and diligence in that behalf is but a main part and parcel of the very body of their duties. If such board is to complacently assume that its treasurer is competent and honest, and is to assume, without looking or inquiring elsewhere than in his own books, that his accounts are true, then the board is a mere ornamental appendage with prefunctory duties, and its supervision and management are idle formulas, pertaining to the surface (and missing the heart) of the matter. Nothing is so productive of integrity and care as the knowledge on the part of an officer that his official acts in handling public funds pass under the vigilant, scrutinizing and impartial eye of an efficient and intelligent board of management. To the contrary, nothing is so conducive to slovenliness, inefficiency and dishonesty as that a board of managers, with eyes blinded with conventional confidence in its officers, assume as true the very thing they were appointed to seek out and determine, viz., that their treasurer's books tell the whole truth about the receipt of public moneys. Those who sign bonds, as sureties for treasurers, sign them in the assurance that superintendents and boards of managers will perform the duties cast upon them by the law.

In Shelby County v. Bragg, supra, Bragg, as circuit clerk, made his quarterly and annual statements under oath to the county court of the fees received by virtue of his office. These reports were approved as settlements. Subsequent investigation showed that he had not reported certain fees. In a suit to recover, the Statute of Limitations was successfully interposed as a defense. The county appealed, and the judgment was affirmed. Speaking to the point (we think decisive of the case at bar), MACFARLANE, J., with the concurrence of his brethren, said:

"The question is whether the statements made by defendant were such fraudulent concealments of the

facts as delayed the operation of the statute until a discovery of the truth. The question is not whether the county, or its agent the county court, was merely ignorant of the facts constituting the cause of action. Such ignorance will not suspend the operation of the statute unless it can be properly attributed to the fraudulent concealment of the facts by defendant. [Wells v. Halpin, 59 Mo. 97; Garrett v. Conklin, 52 Mo. App. 659, and cases cited; Foley v. Jones, 52 Mo. 64.]

"It cannot be said that the evidence of the facts constituting plaintiff's cause of action was concealed or suppressed. The evidence all existed upon the official books and records of the office open to the examination of the court. The expert accountants who afterward made an examination encountered no difficulties in making an account of fees collected. They reported no destruction of books, or the suppression or concealment of no fact which could prevent an accurate statement being made.

"It is insisted that the duty of this officer and his relation to the county court was such that the latter had the right to rely implicitly on the correctness of these statements and that making a statement which did not fully and truthfully account for all fees collected is such a fraudulent concealment of the facts as would delay the running of the statute. But the county court is required to examine the statements and see that they are correct before approving them; it was not intended that they should accept as true any statement the officer should make. The evidence by which the truth could have been ascertained was at hand and open to their examination. Indeed the statements themselves did not all purport to be accurate; they do not pretend to give an itemized account of the fees collected and from whom; they virtually refer the court to the records of the offices for the evidence.

"The county court is given the power to audit the accounts of these officers and it is made their duty to examine statements made by them, and, if necessary, to hear the evidence of witnesses. A mere examination of the statements is not a proper performance of their duty. They should see that the statements are correct. This is particularly so when the statements on their face, as in this case, are not such as the law requires. It cannot be said that the county court was ignorant of facts which were open to its examination, and which it was its duty to know."

A case nearly in point as on all-fours is the District Township of Boomer v. French, 40 Ia. 601.

Unless the doctrine of the Bragg case is to be overturned it must control here. We know of no public policy or principle of law demanding the case to be overruled. It but proceeds upon trite precepts relating to negligence (and its converse, due diligence and care), viz., that he who has at his disposal the means of knowing, is held to know; that he who shuts his eyes when to open them and look is to see, is held to see; and that where there is a duty to use diligence those facts which diligence will discover are presumed to be known under the law of notice. One must not go to sleep or rest on his oars where the issue is negligence. He must be up and doing, for the law favors the wakeful and diligent. [Adams v. Gossom, 228 Mo. 566.]

In speaking to the point of when a cause of action, containing an element of fraud and concealment, accrued, ELLISON, J., in State ex rel. v. Hawkins, 103 Mo. App. l. c. 254, said: "Our conclusion is that it accrued when plaintiff discovered the fraud; or when, by proper diligence as an ordinarily prudent man, he, under the circumstances, should have discovered it."

In Wood v. Carpenter, 101 U. S., supra, many cases illustrating the application of the foregoing precepts are reviewed, and the general doctrine is announced that a party to avoid the bar of the statute

on account. of fraud must aver and show that he used due diligence to detect it—that if he had means of discovering the fraud, he would be held to have known it.

The fraudulent concealment avoiding the running of the statute must go beyond mere silence. It must be something actually done or said directly intended to prevent discovery—some active conduct in thwarting investigation. [Smith v. Blachley, 198 Pa. St. 173.] In Stone v. Brown, 116 Ind. l. c. 81, the exposition of the matter was as follows: "As has often been declared, the Statute of Limitations is a statute of repose, and in order to bring a case within the section above referred to, and avoid the operation of the statute, something more than silence, or mere general declarations or speeches, on the part of the person liable, must be shown. It must appear that some trick or artifice has been employed to prevent inquiry or elude investigation or calculated to mislead and hinder the party entitled from obtaining information, by the use of ordinary diligence, that a right of action exists; or it must appear that the facts were misrepresented to or concealed from the party, by some positive acts or declarations, when inquiry was being made or information sought, and the particular acts of concealment or misrepresentation made must be set out in the pleading. Beside, 'the circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.' "

It ought not to be necessary to add that there are limitations to the doctrines announced above, and that they are subject to modification in cases involving a fiduciary relation. [Vigus v. O'Bannon, 118 Ill. 334; Fisher v. Tuller, 122 Ind. 31.]

There being abundant evidence to sustain the finding of the referee on the lack of due diligence, his legal conclusion that the statute bars the action follows as a sequence.

We look in vain in the pleadings abstracted to see any allegation in the petition or reply, bringing the case within the exception preventing the statute's running. It is elementary that the party relying on the presence of fraud and concealment in preventing the bar of the statute should take himself out of the general rule of the statute and bring himself within the exception by proper averments of fact, to be followed by proper proof. [Wood v. Carpenter, supra; Stone v. Brown, 116 Ind. 78; Mather v. Rogers, 99 Ia. 292; Wood on Limitations (3 Ed.), sec. 276; Callan v. Callan, 175 Mo. l. c. 361.] But it seems the case was tried, *nisi*, as though the pleadings were broad enough to raise the issues of fraudulent concealment and due diligence. We have, therefore, allowed it to proceed here as if issues so threshed out at the trial were within the purview of the pleadings.

Let the judgment be affirmed. All concur.