**STATE ex rel. SCHOOL DIST. OF ST. JOSEPH**

**v.**

**WELLS et al.**

**STATE ex rel. and to Use of BUCHANAN COUNTY**

**v.**

**WELLS et al.**

Nos. 43627, 43628.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

Motion for Rehearing or to Modify Opinion Denied Sept. 13, 1954, in No. 43,627.

Alva F. Lindsay, St. Joseph, for appellant State ex rel. School Dist. of St. Joseph.

John E. Downs, Pros. Atty., Gordon C. Shaffer, Jr., Asst. Pros. Atty., Frank Connett, Jr., St. Joseph, for appellant State ex rel. and to use of Buchanan County.

Brown, Douglas & Brown, R. L. Douglas, St. Joseph, for respondents.

LEEDY, Judge.

These companion cases were consolidated for argument, and will be disposed of in a single opinion. Both grow out of the same facts, their procedural steps were exactly alike, and the ultimate question in each case is the same, i. e., whether the actions are barred by limitations. They were brought in the name of the State of Missouri, one at the relation of Buchanan County and the other at the relation of the School District of St. Joseph, against Jim Wells, former Collector of the Revenue of Buchanan County, and the surety on his official bond, The National Surety Corporation, to recover the full penalty thereof, $100,000, the amount of alleged defalcations on the part of Wells occurring during his term of office as collector, 1935–1939.

On February 27, 1943, four years (lacking one week) after Wells' term of office had expired, relators (appellants) instituted these actions by filing their petitions. The transcript is silent as to any further steps in the litigation until eight years and nine months later when, on November 23, 1951, they filed identical amended petitions. In due time defendant surety (respondent here), by motions to dismiss, or, in the alternative, to make more definite and certain, attacked the sufficiency of the amended petitions. Upon the sustention of the motions to dismiss (on the ground thereof that the actions were barred by limitations), and plaintiffs declining to plead

further, the court entered judgment of dismissal in each case, and plaintiffs appealed.

While our disposition of this case has not been influenced by the want of numbering of the paragraphs averring plaintiffs' claims, we do remind that the requirement of the statute in that regard, Section 509.-120 RSMo 1949, V.A.M.S., has a definite and useful purpose, and compliance in this instance would have facilitated our consideration and statement of the contentions, pro and con, touching the sufficiency of certain of the averments. The petitions are duplicates, so for convenience in hereinafter referring to them, the singular number will be used.

The petition alleges the official position and status of Wells as Collector of Buchanan County for a term beginning in March, 1935, and ending in March, 1939, and the due execution, filing, approval and recordation of the bond sued on, the condition of which was [as provided by RSMo '29, § 9939] that if Wells "shall faithfully and punctually collect and pay over all state, county and other revenue for the four years next ensuing the first day of March, 1935, and in all things faithfully perform all the duties of his said office of Collector according to law, then this bond to be void; otherwise to remain in full force and effect."

The petition then alleges that "during his said term," Wells was "guilty of breaches of said bond as hereinafter set out;" that as said collector, he "collected and received for and on account of the relator and upon the tax books and delinquent tax lists placed in his hands for collection sums of money due and owing to the relator in the amount of One Hundred Thousand Dollars ($100,-000.00), which said sums were collected from sundry persons and taxpayers," which sums he failed and refused, and still fails and refuses to pay over to relator as required by law. It is then alleged that Wells falsely and fraudulently returned as unpaid the taxes so collected by him, and that he collected, and wrongfully and unlawfully retained for his own use and benefit said tax moneys and other moneys in the amount

of One Hundred Thousand Dollars ($100,-000) due and owing to relator, as aforesaid.

We now set out verbatim those allegations of the petition the sufficiency of which to avoid the bar of the statute is the determinative question:

"Relator further states that the defendant, Jim Wells, unlawfully and wrongfully and fraudulently failed and neglected to make proper entries and records in the books and records of his office concerning said sums of money collected by him as aforesaid; and unlawfully, wrongfully and fraudulently made false entries and records in the books and records of his office concerning said sums of money collected by him as aforesaid; and that as a result of said failure and neglect to make proper entries and records, and as a result of said false entries and records, an examination of the books and records of his office would not reveal the true amount of taxes and revenues collected by him, and would not reveal the fact that said defendant, Jim Wells, has failed to account for and pay over according to law said sum of One Hundred Thousand Dollars ($100,000).

"The relator further states that the defendant, Jim Wells, by the manner and method in which he conducted his office and kept his official records fraudulently and wrongfully concealed the fact that he had in truth and fact collected said sum of One Hundred Thousand Dollars ($100,000) as aforesaid, and has failed to account for and pay over to the relator said sum at the times and in the manner required by law.

"The relator further states that a true, correct and complete copy of the annual settlements, and each of them, made by Jim Wells, County Collector of Buchanan County, Missouri, are attached hereto and made a part of this petition. (Exhibit—Annual Settlements—filed separately.) That said annual settlements, and each of them, were regularly and duly filed with the County Court of Buchanan County, Missouri, and were by said Court duly examined, the contents thereof discussed with the said County Collector, and after due consideration and investigation by the said County Court, said settlements were approved. That said reports appeared in all manner and respect to be true and correct and the amounts collected and to be collected balanced with the tax collection records of said county. Said annual settlements, and each of them, did appear to account for all sums of money collected and to be collected by said County Collector of Buchanan County, Missouri, Jim Wells.

"The relator further states that the official settlements and reports which the defendant, Jim Wells, made to the County Court of Buchanan County, Missouri, during his said term of office including his annual settlements and each of them herein above mentioned, were false, untrue and fraudulently made and did not account for said sums of money collected as aforesaid, and concealed the fact that said sums had been collected and should be paid over and accounted for."

The petition then averred "that by reason of the foregoing the defendants had become liable to the State of Missouri for the use of the relator for the sum of One Hundred Thousand Dollars as damages," and that plaintiff is entitled to receive and recover 6% interest thereon "from the date of the expiration of his [Wells'] term of office." The prayer was for judgment against defendants for the full penalty of the bond, $100,000, and that plaintiff have execution for that sum together with 6% interest thereon from the ———— day of March, 1939.

It is conceded that the action would normally be barred under the applicable statute of limitations, Section 516.130(1) RSMo 1949, V.A.M.S. (prescribing a three-year period). But plaintiffs rely upon concealment of the cause of action by Wells as tolling the statute, and the case turns upon the sufficiency of the quoted allegations of the petition to raise that issue. We do not pause to determine the surety's contention that the petition is fatally defective under Section 522.200 RSMo 1949, V.A.M.S., for failure to assign the specific breaches for which the action is brought. For present

purposes, it will be assumed that the petition is good in that regard, and it will be further assumed that, apart from avoidance of the bar of the statute, it otherwise states a claim upon which relief can be granted.

The respondent surety's position is that the allegations of the petition are insufficient to toll the running of the statute for the reason it appears from the face of the petition and the accompanying exhibits (photostatic copies of the collector's annual settlements) that neither the collector's annual settlements nor the county court's action thereon were in conformity with the governing statute, § 9918, RSMo 1929 (now Section 139.160, RSMo 1949, V.A.M.S.), in consequence of which the petition can be said to show nothing more than inexcusable ignorance on the part of the county court with respect to the truth or falsity of the collector's settlements, and negligent inaction by it. While the general and sweeping complaint is made that the settlements "are not and do not purport to be the kind of settlements the statute requires the collector to make, and also requires the county court to exact of the collector," no deficiency in the form of the settlements, as made, is pointed out or relied on other than the admitted failure of the collector, in connection with his annual settlements, to "return the delinquent lists" (as provided by the section in question), and the manner of approval of such settlements by the county court.

§ 9918, RSMo 1929 (now Section 139.160, RSMo 1949, V.A.M.S.), reads as follows:

"1. At the term of the county court to be held on the first Monday in March, the collector shall return the delinquent lists and back tax books, and in the city of St. Louis the uncollected tax bills and back tax books, under oath or affirmation, to such court, and settle his accounts of all moneys received by him on account of taxes and other sources of revenue, and the amount of such delinquent lists, or so much thereof as the court shall find properly returned delinquent, shall be allowed and credited to him on his settlement. 2. Before allowing the collector such credit for any delinquent lists, the county court shall make special inquiry and be fully satisfied that he has used due diligence to collect the same, and that he could not find any personal property of the taxpayer out of which to make the taxes. 3. If the court is satisfied that there are any names on the lists of persons who have personal property out of which the taxes could have been made, it shall, in passing upon such lists, strike such names therefrom."

■ The rule with respect to the fraudulent concealment of a cause of action operating to postpone the running of the statute of limitations is thus stated in 34 Am. Jur., Limitation of Actions, § 231: "According to the majority rule, however, fraudulent concealment of a cause of action from the one in whom it resides, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action; under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered. Stated in another way, the general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another, by actual fraudulent concealment prevents such other from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the statute of limitations will begin to run from the time the right of action is discovered or, by the exercise of ordinary diligence, might have been discovered." Such is the Missouri rule. Shelby County v. Bragg, 135 Mo. 291, 298, 36 S.W. 600, 602; State ex rel. Bell v. Yates, 231 Mo. 276, 132 S.W. 672.

Buchanan County, invoking this doctrine, relies exclusively upon the Shelby County

and Yates cases, together with State ex rel. Barringer v. Hawkins, 103 Mo.App. 251, 77 S.W. 98. In fact, these three are the only authorities cited in the county's brief. (The Shelby County case was not an action on an official bond, but the Yates case which follows it does make its doctrine applicable to an action on an official bond—treasurer of a state hospital.) On the other hand, the respondent surety, tacitly conceding the proposition for which the county cites the Shelby County and Yates cases, nevertheless places its principal reliance upon the same cases, and particularly stresses the Shelby County case, but on another holding, of course—that with reference to the duty and conduct of the county court in the matter of passing on annual settlements of county officers. The brief characterizes the latter case as being " a complete answer to all of the contentions of the relators with respect to the sufficiency of their allegations to toll the statute of limitations." The only view expressed by the school district with respect to the Shelby County case is that the language thereof here invoked by the surety "was unnecessary to the decision, and is broader than should have been used, and is altogether impracticable in the matter of handling county business."

As previously mentioned, the Shelby County case was not an action on an official bond. It was an action at law against a former circuit clerk and ex-officio recorder to recover allegedly excessive fees withheld by him during his term of office. Its nature as being one for the omission of an officer to discharge an official duty or simply for money had and received, while commented on, was not decided. The case did not go off on a question of pleading, but a trial upon the merits resulted in a directed verdict for the defendant. On appeal to this court it was held that the action, when commenced, was barred by limitations. To avoid such bar, the petition had charged "that defendant, by his quarterly and annual statements, and statements made with the county court, falsely and fraudulently concealed from the court the true amount of fees received," *and that the facts were* *not discovered until a certain time when the action was at once commenced.*

It was there contended, 135 Mo. loc. cit. 299 and 36 S.W. loc. cit. 601–602, that the relationship between the defendant and the county court "was such that the latter had the right to rely implicitly on the correctness of these statements, and that making a statement which did not fully and truthfully account for all fees collected is such a fraudulent concealment of the facts as would delay the running of the statute." In rejecting that contention the court said: "But the county court is required to examine the statements, and see that they are correct, before approving them. It was not intended that they should accept as true any statement the officer should make. * * * Indeed, the statements themselves did not all purport to be accurate. They do not pretend to give an itemized account of the fees collected, and from whom. They virtually refer the court to the records of the offices for the evidence. The county court is given the power to audit the accounts of these officers, and it is made their duty to examine statements made by them, and, if necessary, to hear the evidence of witnesses. A mere examination of the statements is not a proper performance of their duty. They should see that the statements are correct. This is particularly so when the statements on their face, as in this case, are not such as the law requires. It cannot be said that the county court was ignorant of facts which were open to its examination, and which it was its duty to know." But this ruling is to be read in the light of the facts there in judgment, the mere statement of which will disclose the inapplicability of that case to the one at bar. Contrary to the situation we are presently considering, there the books and records of the clerk showed the actual amount of fees received by him. Of that matter the opinion said, 135 Mo. loc.cit. 298–299 and 36 S.W. loc. cit. 601: "It cannot be said that the evidence of the facts constituting plaintiff's cause of action was concealed or suppressed. The evidence all existed upon the official books and records of the office, open to

the examination of the court. The expert accountants who afterwards made an examination encountered no difficulties in making an account of fees collected. They reported no destruction of books, or the suppression or concealment of no fact which could prevent an accurate statement being made."

Likewise, the Yates case was ruled upon substantial evidence showing lack of diligence on the part of the board of managers of the state hospital at whose relation the action was brought. The hospital's own books and records showed the misappropriations. In that regard, the court said this, 231 Mo. loc.cit 286–287 and 132 S.W. loc. cit. 674: "At that very time facts and documents (duplicate receipts) showing systematic and heavy stealing were spread on the very books of the hospital, and were in its files, subject to their [the board's] command for inspection and use. Their bookkeeper kept a set of books as did the treasurer [Thomas, the defaulting officer]. * * * The books kept by the bookkeeper show that Thomas had received from time to time many thousand dollars he was, in some instances, not accounting for, and, in others, was accounting for long after their receipt. The superintendent, under the evidence, as well as the bookkeeper and ex officio secretary of the board, had handled most of the warrants, checks, and drafts evidencing the moneys stolen, and, as said, these amounts appeared on the books of the bookkeeper, and yet neither the bookkeeper nor the superintendent were asked to investigate the state of Thomas' accounts as spread on the bookkeeper's books, nor did the board investigate the bookkeeper's books and compare them with Thomas' to see if they tallied."

It is obvious that the facts in both the Yates and Shelby County cases are so wholly dissimilar to those presented by the allegations of the petition in the case at bar as to render them inapplicable on the point urged by the surety. However, both cases are authority on the question of the necessity of pleading diligence and discovery.

The principal points urged for reversal by the school district are that a relation of trust and confidence existed between the collector and the members of the county court which justified the county court in relying on the statements of the collector in presenting and explaining his annual settlements; that the collector's settlements having "in all respects appeared to be true and complete, but in fact fraudulently concealed as delinquent, taxes that had been paid, such concealment tolls the running of the statute of limitations * * * until actual discovery of the fraud," the county court not "being required to suspect fraud, nor make inquiry where there is no irregularity apparent." The authorities cited in support of these propositions are: Maryland Casualty Co. v. Kansas City, Mo., 8 Cir., 128 F.2d 998; Briece v. Bosso, Mo.App., 158 S.W.2d 463; 54 C.J.S., Limitations of Actions, § 191, page 197, State ex rel. Barringer v. Hawkins, 103 Mo.App. 251, 77 S.W. 98; § 12153, RSMo 1929; Selle v. Wrigley, 233 Mo.App. 43, 116 S.W.2d 217; Monmouth College v. Dockery, 241 Mo. 522, 145 S.W. 785; Foster v. Petree, 347 Mo. 992, 149 S.W.2d 851.

We think the Shelby County case is controlling authority against the existence of a confidential relationship between the county court and the collector, as urged by the school district. The only difference between the Bragg case and the case at bar in that respect is that one involved a circuit clerk and ex-officio recorder, and the other a collector. No reason is advanced why a different rule should apply in the case of a collector. We are therefore forced to the conclusion that no such relation existed, and that the school district's cases are not apposite.

Assuming, without deciding, that the alleged concealment tolled the running of the statute "until actual discovery of the fraud," we are nevertheless of the opinion that neither the school district nor the county has brought itself within the rule governing pleading of discovery where discovery is relied on. That rule is thus succinctly stated in the sixth syllabus in Womack v. Callaway

County, Mo., 159 S.W.2d 630: "When discovery of fraud is relied on to toll the statute of limitations, the pleading should aver when the discovery was made, what it was, how it was made, and why it was not made sooner."

The petitions contain no such allegations. There is no allegation that the plaintiffs brought their actions within the statutory period after discovery of the alleged defalcations, and this, under the cases, is fatal. Womack v. Callaway County, supra, and cases there cited.

The judgments are affirmed.

CONKLING and HOLLINGSWORTH, JJ., concur.