Davis v. Carp.

---

MANTON DAVIS, Appellant, v. SAMUEL CARP.

### Division Two, June 2, 1914.

1. **LIMITATIONS: Revival of Judgment: Absence from State: Concealment.** The fact that for a few months prior to the expiration of ten years from the date of the judgment defendant was in another State for the purpose of testing out the establishment of a business there, and that he intended to establish a residence there if his venture succeeded, did not amount to an absconding or concealment, if his usual place of abode was in the city in which the judgment had been rendered, his family lived there and service upon some member of his family over fifteen years of age could have been had there—even if the statute (Sec. 112, R. S. 1909) could be tolled. Defendant did not abscond or conceal himself in a legal sense by that conduct.

2. ———: ———: ———: ———: **Fraud: To Prevent Commencement of Action.** In order that Sec. 1905, R. S. 1909, may be applicable, the absconding or concealing must be of

such a character as to "prevent the commencement of the ,action," and an "improper act" referred to therein must be one in the nature of a fraud that would likewise prevent the commencement of the action.

3 ———: ———: Concealing Name. For a defendant to conceal his name from plaintiff is not to prevent the commencement of an action against him—especially where the misrepresentation has no causal connection with the failure of the officer to find him or the dismissal of the suit when brought.

4. ———: ———: Tolled by Non-residence, etc. Whether or not Sec. 1912, R. S. 1909, providing that a judgment shall be presumed to be paid in ten years after its rendition, a partial payment or revival, can be tolled by non-residence, absconding or concealment, is adverted to in the opinion and the history of the statute traced from the time of its first enactment in 1835; but the question is not decided, because to do so would be *obiter*, since under the facts there was no concealment, absconding or non-residence within the ten years.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*Stanley D. Pearce, James G. McConkey* and *James A. Potter* for appellant.

(1)   The ten-year Statute of Limitations in actions on domestic judgments against residents of the State, prescribed by section 1888 or section 1912 (if constitutional), is tolled by defendants departure from and residence out of the State of Missouri after the cause of action had accrued.  Sec. 1897, R. S. 1909; McMurray v. McMurray, 180 Mo. 526; Sauter v. Leveredge, 103 Mo. 615.   (2)   Further, "if any person by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time limited after the commencement of such action shall have ceased to be so prevented."   Sec. 1905, R. S., 1909;

Harmon v. Looker, 73 Mo. 622; Butler v. Lawson, 72 Mo. 227. (a) Section 1912, if not considered as a Statute of Limitation, insofar as it attempts legislatively to fix as a conclusive presumption of fact of payment by mere lapse of time, is an assumption of a judicial function, in contravention of section 10, article 2, of the Missouri Constitution and unconstitutional and void. Constitution, sec. 10, art. 2; Paving Co. v. Ridge 169 Mo. 387; Shibel v. Merrill, 185 Mo. 546; Paving Co. v. Munn, 185 Mo. 566; Construction Co. v. Coal Co., 205 Mo. 62; Dickey v. Holmes, 208 Mo. 667; Railroad v. Simonson, 57 L. R. A. (Kas.) 765; 8 Cyc. 820. (b) On the other hand, a legislative act declaring that stated evidence creates a rebuttable, a prima-facie presumption, is proper. State ex inf. v. Goffie, 192 Mo. 670. (4) Section 1912 if not considered as a Statute of Limitations insofar as it attempts to declare that a conclusive presumption of the fact of payment arises from the mere lapse of ten years, is in contravention of the provision of the Constitution declaring "that no person shall be deprived of life, liberty or property without due process of law," and is unconstitutional and void. Art. 2, sec. 30, Constitution; Construction Co. v. Coal Co., 205 Mo. 62; Roth v. Gabbert, 123 Mo. 21; Abbott v. Landenbower, 42 Mo. 162; U. S. v. Klein, 80 U. S. 128; Railroad v. Payne, 33 Ark. 816: Meyer v. Berlandi, 39 Minn. 438; Wantlton v. White, 19 Ind. 470; Chicago v. Minn., 144 U. S. 418. The application which the court gave below to section 1912, deprived appellant of his property "without due process of law," in view of the fact that appellant as an assignee of the Stone judgments was without remedy to revive the same by scire facias. Bick v. Robbins, 131 Mo. App. 670; Bick v. Tansey, 181 Mo. 515. (5) Section 1912 has been construed as a Statute of Limitations, not as a conclusive legislative presumption of payment. Bick v. Robbins, 131 Mo. App. 673. Hence it necessarily follows that the time for the commence-

ment of proceedings thereon is tolled by the general provisions of sections 1897 and 1905, under the citations and authorities above, points one and two.

*H. H. Bloss* for respondent.

(1)    Under the provisions of Sec. 1912, R. S. 1909, a judgment after the expiration of ten years is conclusively presumed to have been paid, if not revived in the interim or a payment endorsed on the record of such judgment.   If a payment has been endorsed thereon or a revival had, then the statute begins to run from the date of such payment or revival.   Cobb v. Houston, 117 Mo. App. 645; Chiles v. School District, 103 Mo. App. 240; Airy v. Swinford, 154 Mo. App. 587; Wenneker v. Thompson, 96 Mo. App. 67.   (2)    The statute above mentioned being one of conclusive presumption of payment, the absence of the defendant or judgment debtor from the State or such other facts as might toll a Statute of Limitations, is not arrested by such facts.   Cobb v. Houston, 117 Mo. App. 645; Amy v. Watertown, 130 U. S. 320; Airy v. Swinford, 154 Mo. App. 584.   (3)    There is a strong presumption in favor of the constitutionality of a statute, and it will not be declared void, unless the violation of the Constitution is so palpable as to leave no room for reasonable doubt.   State ex rel. v. Fort, 210 Mo. 512; Rodes v. Warner, 197 Mo. 650; State ex rel. v. Walker, 193 Mo. 693.

LAMM, J.—Dates are material.   On the 26th of January, 1898, in the circuit court of St. Louis the receiver of the Mullanphy Savings Bank recovered a small judgment against Rosenberg and two Carps (Max and Sam).   On the next day in the same court he recovered another.   On the 4th of August, 1904, he assigned the judgments on the margin of the record for value received to plaintiff.

258 Mo.—44

Davis v. Carp.

(Note: We assume the receiver made a clearance sale of uncollectible or desperate assets in a job lot to clear the way for a settlement of his receivership and his acquittance—the record showing the following, plaintiff *loquitur*: "A.   I do not know what I paid for these judgments, Mr. Bloss.   I paid $310 for this and a lot of other paper.   Q.   Can you give any idea of the amount of claims you received?   A.   No, sir. Q.   No idea at all?   A.   No.   There was a lot of hotchpot stuff barred by the Statute of Limitations and otherwise and I haven't any idea how much stuff there was.")

On March 13, 1907, plaintiff, as such assignee, sued the Carps on both said judgments, in the same court.   Failing to get service on the present defendant, he dismissed as to him, and took judgment against Max Carp for the rise of $700.

On the 12th of February, 1909, the present suit was brought in the Christian Circuit Court on both of the original judgments and service was had.   Presently plaintiff took a change of venue and the case went to the Lawrence Circuit Court.   Presently defendant took a change of venue and the case went to the Jasper Circuit Court.   There it was tried to the court, without the aid of a jury, and plaintiff (cast on the merits) appeals here in due form—our jurisdiction depending on constitutional questions.

*The pleadings.*

The case was tried on a third amended petition in two counts containing conventional averments relating to the recovery of the judgments, their assignment and nonpayment.   To toll the Statute of Limitations each count alleged, in substance, that having instituted suit on the judgments in the circuit court of the City of St. Louis on the 13th of March, 1907, and issued summons, the sheriff made return that he failed to find "defendant Sam Carp in the city of St. Louis,

Missouri"; that said Carp was a resident of said city at the time of the rendition of the original judgments and continued to be such resident until "the — day of May, A. D., 1907"; that he then left the State of Missouri and has continuously resided out of the State thereafter, is now a non-resident and has no usual place of abode in the State where service of process might be had on him. To the·same end the petition makes the following averment:

"And plaintiff further states that prior to his departure from the State of Missouri, as aforesaid, the defendant herein absconded and concealed himself in this State so that the ordinary process of law could not be served upon him, and plaintiff further says that the defendant from and after to-wit, the 11th day of March, A. D., 1907, until to-wit, the— day of May, A. D., 1907, was guilty of a wrongful and improper act preventing the service of process on him, in this: That he misrepresented his identity to the plaintiff when the said plaintiff was attempting to locate and identify the defendant Sam Carp in order to have process served upon him."

The answer, excepting therefrom the allegations specially admitted, is a general denial. It then goes on to admit the recovery of the original judgments, but denies they have never been paid as alleged. *Contra*, it alleges they have been fully paid and settled before suit and that plaintiff has no right to maintain the action. Moreover, as a separate defense, it alleges that more than ten years have intervened since the rendition of the judgments and the bringing of this suit, and, therefore, said judgments are barred by the statute. Denying that he was a non-resident of the State or kept himself concealed for the purpose of preventing the service of process on him, defendant "asks to go hence without delay [sic] and recover his costs herein laid out and expended."

The replication denied the new matter.

*The facts.*

Defendant introduced no evidence. Plaintiff introduced certified exemplifications of the two judgments and marginal assignments, also an exemplification of the files and record of a suit brought on the judgments in the circuit court of St. Louis on the 13th of March, 1907, and a *non est* return of the sheriff on the summons in that case as to this defendant, the dismissal as to him, and the judgment as to Max. Such documentary evidence was supplemented by the deposition of one Ingersoll, also the deposition taken by plaintiff of Max Carp, also the oral testimony of Mr. Davis, the plaintiff.

By Ingersoll's deposition plaintiff showed that he (witness) was a detective; that in September, 1907, he saw defendant in a store at Greenville, Illinois, at work there with his two boys. Later in the same month he saw the boys there again. This detective had a kodak and was there for the purpose of taking a snap-shot picture of defendant. He took a snap-shot of him, but the negative did not develop well. In October of that year he went back on a like venture, and spying about, saw him busy in the store, but failed to get a snap-shot because defendant didn't come out. It seems this detective was employed by the Pinkerton Detective Agency to get a picture of defendant for the purpose of some insurance controversy the agency was employed in. This fact was developed in cross-examination, and further that the detective made no inquiry in St. Louis where defendant lived; that on one of his visits to Greenville he talked with defendant, but did not tell him what he came for or that he was a detective, nor did he ask his consent to take his picture, but made several attempts to do so (furtively, as we understand it) while he was in the store, but did not succeed because the light was insufficient. The detective made three trips to Greenville and saw defendant twice—the first and last time. He testified that on the second trip defendant was not in Greenville, but

was in St. Louis. He made no inquiry as to where defendant's wife resided and did not know, and did not know where his family was; in fact, the detective was not employed to find defendant's residence, but was employed to get his picture and "did not care" where he lived.

By the deposition of Max Carp plaintiff showed that he, Max, was defendant's brother; that in 1897 defendant went to Aurora, Missouri, with his family, and worked there for another brother, H. Carp, for about five years. In 1902 defendant returned to St. Louis and there and then opened a cleaning and repair shop under the name of ".S. Carp" on Jefferson Avenue, and continued that business at that point and on Broadway until some time in 1907, living in St. Louis (possibly on Missouri Avenue) with his family, consisting of a wife and nine children, all minors. Sometime early in 1907 defendant rented some rooms from witness on Carr street, and took up his residence there, continuing to live in those rooms with his family until later. In March, 1908, defendant moved his family to Greenville, Illinois, and since then they have lived there. Prior to taking his family to Illinois (i. e. sometime in 1907) defendant went there to try and see if he could establish a business; intending to take his family later if he succeeded, which he did, as said. After the Greenville venture began and up to the time the family was moved, defendant returned once a week to visit them, sometimes on Sundays and sometimes in the middle of the week. This witness further testified that while defendant worked for his brother H. Carp in Aurora, he went under the name of "S. Carp" and that such was the name he usually went under. It also turns out that his true name is "Sol. Carp" and that Samuel is the father's name. On cross-examination it was shown that when defendant moved his family to Carr street to the rooms rented of witness, he brought his furniture and kept house there; that the

run from St. Louis to Greenville is about an hour and twenty minutes on a fast train; that when he found out that he could make a living at Greenville, in March, 1908, he moved his family there, telling witness: "Now I am going to live there."

Plaintiff testified in his own behalf (and over the objection of defendant) that the two judgments remained wholly unpaid; further that two days before he instituted the suit on the judgments in the St. Louis Circuit Court, to-wit, on the 11th of March, 1907, he started out to locate his judgment debtors, the Carps. Having studied the directory and obtained what information he could on inquiry at the houses he visited, he finally found defendant at 2251 Missouri Avenue, in the kitchen in the back part of his house, a residence, and not a business house, having his lunch. Witness did not know him, but informed him he (witness) was looking for Max and Samuel Carp, asked him if he was either of the two and, if not, to direct him where they were. Defendant told him his name was Eagle Carp. Asked to spell it, he spelled it I-e-g-l-e. Let witness tell the balance in his own words: "He further told me he didn't know exactly where Samuel Carp was, but thought he was in business in Cairo, Illinois; inquired further as to my errand and I told him all about these judgments and thereupon he told me he didn't think Samuel Carp was worth anything, but as a mere matter of business (elsewhere witness testified that he remembered 'his peculiar pronunciation of the word') he would give me $15 for the judgments. That was practically the whole of the conversation I had with Mr. Carp at that time."

Two days later plaintiff instituted his St. Louis suit. It does not appear that he gave the sheriff any directions where to look for the Carps or either of them, and he says he did not assist the sheriff in trying to find defendant, nor does it appear he made inquiry of Max Carp, or gave the sheriff what information he

had.   Witness never saw Mr. Carp again until the time depositions were taken in his office (presumably the depositions of Max Carp and the detective used in this case.)   The recognition came about in this way: "I never," said witness, "recognized him exactly at the time the deposition was taken until it was over. I had a hazy recollection this was the man. . After the deposition was over Mr. Carp recalled the matter to my mind and I remembered this was the man I had seen under these circumstances at his home on Missouri Avenue. . . .   He says, 'Don't you remember having called on me on Missouri Avenue?'   I became a little angry then and told him I did remember it, and I likewise remembered he had lied to me."

Such are substantially the facts.

The instructions and statute in judgment are to-wit:

Section 1912, Revised Statutes 1909, held in judgment, reads:

"Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever."

Defendant asked and received (plaintiff objecting and excepting) an instruction applicable to each count

to the effect that the court declares the law to be that under the pleadings and evidence the judgment should be for the defendant.

On his part plaintiff asked instructions, all refused, to-wit: (No. 1) to the effect that section 1912, supra, is inoperative and void in that it is violative of section 1, article 6, of the Constitution of Missouri, in seeking to deprive the courts of a judicial power vested in them; and another (No. 2) to the effect that said section 1912 is unconstitutional in that it denies to plaintiff "certain remedy for defendant's injury to plaintiff's property and denies right and justice to the plaintiff" contrary to section 10, article 2, of the Constitution; and another (No. 3) to the effect that section 1912, supra, is violative of section 30, article 2, of the Constitution in that it deprives plaintiff of his property without due process of law; and another (No. 4) that section 1912, supra, is violative of article 3 of the Constitution as an attempt on the part of the Legislature to exercise the powers of the government vested in the judicial department; and, finally, another one reading:

"5. The court declares the law to be that if defendant, Samuel Carp, prevented the process of service upon himself in an action pending in the circuit court of the city of St. Louis, Missouri, from March 13, 1907, to April 4, 1907, brought by the plaintiff against the defendant on the same cause of action herein sued on, and that if this was done by the defendant misrepresenting his identity to the plaintiff on or about the 11th day of March, 1907, then such act was a wrongful and improper act on the part of the defendant and the period of the pendency of such action shall not be counted in determining whether or not the plaintiff is precluded from recovery in this case by operation of the provisions of section 1912 of the Revised Statutes of Missouri of 1909."

On the foregoing record it is apparent three questions arise:

First, conceding (for the purposes of argument only) that section 1912, Revised Statutes 1909, supra, relating to a conclusive presumption of payment of a judgment in ten years, is so far forth a Statute of Limitations that it may be tolled on proof of non-residence or by proof that the judgment defendant concealed himself or absconded, then the mandatory instruction given for defendant challenges the sufficiency of the proof and the first question relates to such sufficiency.

Second. The next question is: Is section 1912, strictly speaking, such a Statute of Limitations as may be tolled at all? That is, is it subject to the ordinary incidents of Statutes of Limitations relating to the *commencement* of suits, to-wit, non-residence, concealment, fraud, etc., by improper acts.

Third. The last question is: If it can not be tolled and if it is not subject to the usual incidents of the ordinary Statute of Limitations in other respects, then is it constitutional? Let us attend to them *seriatim*.

(a) *Of the sufficiency of the proof.*

In this case (admitting for the purposes of the point that the statute in judgment may be tolled) plaintiff's proof was insufficient. The petition assumes defendant's residence in this State until in May, 1907. Now, under plaintiff's proof, defendant's residence, his usual place of abode, was in this State until in March, 1908, that is, for more than ten years after the date of the original judgments. True it is that for a few months prior to March, 1908, defendant was temporarily (for the purpose of testing out the establishment of a business) in Greenville, Illinois. True, too, he intended to establish a residence there if his venture succeeded. But his experiments in that way were

ordinary ones in business matters—not an absconding or concealment. His absence was casual and temporary. He still had "his usual place of abode" in St. Louis. His family continued to reside in that city. He had not abandoned them and taken up his residence separate from them in Illinois. Legal service of a summons on him in St. Louis could have been made by serving it on some member of his family over fifteen years of age at his usual place of abode on Carr Avenue. [Revised Statutes 1909, section 1760.]

Nor does the evidence show an absconding or concealment or any improper act of a certain brand or character, to-wit, one preventing "*the commencement of an action*" within the purview of section 1905, Revised Statutes 1909. That section reads:

"If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

Obviously, as said, defendant did not abscond or conceal himself in a legal sense. Obviously, too, the absconding or concealing, within the intendment of the statute, must be of such character as to prevent the commencement of the action. So, the "improper act" referred to in the statute must be one in the nature of a fraud that would prevent the commencement of the action, in order to bring the act within the statute. This defendant did no act of that kind, nor did plaintiff tell defendant he desired to commence an action. At most and worst he concealed his name from plaintiff, but that did not prevent the commencement of the action—far from it. Witness the fact that the action was commenced promptly within two days. Moreover, whatever moral wrong defendant was guilty of in his talk with plaintiff is not shown to have any causal connection whatever with the failure of the sheriff to

find him or to find his family and make service on a member of it at his usual place of abode two days later, or at any time.    The sheriff never heard of that conversation.    Nor does it appear that the conversation had any causal connection with the dismissal of the action  presently.

In Amy v. Watertown, 130 U. S. 320, the Supreme Court, speaking by Mr. Justice BRADLEY to a situation more sharply emphasized than here (for in the Amy case there was inability to serve process upon a defendant "caused by his designed elusion of it"), held it was no excuse for not commencing an action within the prescribed period.    In that case the learned justice draws a broad distinguishing line between cases where there is a concealment or fraud that prevents a party from knowing he has been injured and has a cause of action and those cases where a party knows he has a cause of action but from his own fault does not avail himself of the means which the law provides for prosecuting his claim "or instituting such proceedings as the law regards sufficient to preserve it."    In his discussion he makes observations pertinent to the instant case, to-wit:

"The answer made by the plaintiffs to the plea of the statute amounts to nothing more than an allegation that the defendant, the city of Watertown, by the acts of its officers, seeks to evade the service of process. Their language is, that the officers and people have conspired together for the purpose of defrauding the plaintiffs, and to prevent them from obtaining service of process.    Is it fraud in a  debtor to endeavor to evade the service of process?    Is it any more fraudulent than it is not to pay the debt?    Fraud is not the proper term to apply to such conduct.    It may be morally wrong.    It may be dishonest; but it is not fraudulent in the legal sense of the term."

The testimony of the Pinkerton detective we lay out of view on the question of residence, or usual place of abode.    It is instructive and amusing on the subject

of furtive kodak photography. It certainly tends to prove the personal presence of defendant in Greenville in a store at work for one day in September, 1907, and one in the following October. It tends also to show his presence in St. Louis on a given day in the same September. It also tends to show the personal presence of the detective in Greenville for several days and, observe, also "at work"—in the picture line. But it does not tend to show said detective had his usual abode in Greenville any more than that defendant had his there.

The premises in mind, we are of opinion defendant's mandatory instructions were well enough from the viewpoint of the insufficiency of the proof to take the case outside of the statute, even if that statute can be tolled in any way except in the ways mentioned in the section itself. It follows, also, that instruction No. 5 for plaintiff was properly refused as not supported by the proof.

(b)   If we had come to a different conclusion on the question discussed in the foregoing paragraph, then the other two questions raised would bespeak attention, but as the case has broken on the sufficiency of the proof it would be in a sense *obiter* to pass on the question whether section 1912, supra, may be tolled by proof of nonresidence or such concealment or absconding or other improper act (amounting to a fraud) as prevents the commencement of an action. The same is true of the third question, to-wit, the contention of appellant that section 1912, supra, is unconstitutional. We dismiss the matter with these observations: In material features the section assailed is a very old one, originating in 1835. [R. S. 1835, p. 396.] It was brought forward as live law in all material parts in the revisions of 1845, p. 721; '55, p. 1053; '65 p. 749; '79, and '89. In 1895 (Laws 1895, p. 221) the existing statute was repealed and a new one enacted. During all this time, barring certain provisions we may call exceptions

written into the section itself, there was a conclusive presumption. of payment after the lapse of twenty years, agreeing in that respect quite closely with the common law. [Gaines v. Miller, 111 U. S. 1. c. 399 et seq.] In 1895, as said, the statute existing up to that time, substantially in the same form, was repealed and a new one enacted cutting down the time to ten years and prescribing a presumption of payment on the lapse of that time, saying nothing about a "conclusive presumption." However, four years later in 1899 (Laws 1899, pp. 300-301) the Act of 1895 was itself repealed and a new section enacted in lieu of it preserving the limitation at ten years, and reincorporating into itself the conclusive presumption of payment, barring certain exceptions enumerated in the act of which nonresidence, absconding or concealment is not a part; and this Act of 1899 is carried forward into our present revision as section 1912, supra.

The former statutes have been frequently before appellate courts and in no case was their constitutionality (as we see it) assailed from the angle appellant's learned counsel challenge it, and in no case coming to our attention was it held that non-residence, fraud, concealment, etc., tolled that particular statute. Hence, questions thus presented are both novel and grave. To find a new point of attack on so venerable a statute challenges admiration for the courage and versatility of counsel, but as the case has already ridden off on the sufficiency of the proof, even on appellant's own theory of those questions, we deem it wiser to reserve them until a case is reached turning on one or the other in some vital aspect, so that what we then say may be necessary exposition and not unnecessary exposition.

The judgment should be affirmed. It is so ordered. All concur.