Mr. and Mrs. Paul J. SMILE, Appellants,

v.

Sidney O. LAWSON, Respondent.

No. 52183.

Supreme Court of Missouri,
En Banc.

Nov. 25, 1968.

Rehearing Denied Dec. 31, 1968.

Elwyn L. Cady, Jr., Kansas City, and Independence, for appellants.

Malcolm L. Robertson, Joplin, for respondent; Blanchard & Van Fleet, Joplin, of counsel.

STORCKMAN, Judge.

This is an action by a wife and her husband in two counts against a physician and surgeon for malpractice in the performance of an operation on the wife. In the first count the wife seeks $300,000 compensatory damages and $100,000 exemplary damages.

Count two is for the recovery of the husband's expenses and loss of consortium; he prays for $20,000 compensatory damages and $50,000 exemplary damages. The defendant's motion for summary judgment was sustained on the ground that the action was barred by the two-year statute of limitations, § 516.140, RSMo 1959, V.A.M.S., and judgment was rendered for the defendant. The plaintiffs contend that the defendant's conduct constituted fraudulent concealment which tolled the running of the limitation period. The pertinent facts on which the issue must be decided are established by allegations of the petition, requests for admissions, and answers to interrogatories. Portions of the divisional opinion will be used herein without quotation marks.

The facts appearing from the sources mentioned are that in May 1959 Mrs. Smile, suffering from a sore throat, consulted the defendant who is an osteopathic physician and surgeon. The physician prevailed upon her to permit him to perform a thyroidectomy on her. The operation was performed on January 14, 1960, and Mrs. Smile remained under the defendant's care and treatment until October 17, 1960. Following the operation, Mrs. Smile had a hoarse, rasping speech with no sound. While she was still in the hospital, she asked the defendant about this condition and he said it was nothing and would clear up in time; he told her to clear her throat each time before speaking. She moved from Joplin to Kansas City on November 5, 1960. On November 7, 1963, she went to a specialist in Kansas City and learned for the first time that both the right and left recurrent laryngeal nerves, branches of the vagus, had been severed and her vocal cords had been paralyzed as a result of the operation. She was treated by other physicians for various other complaints between the date the defendant's treatment ceased and November 7, 1963. She filed suit on August 4, 1965.

Mrs. Smile further alleged that the defendant misrepresented the nature of the contemplated surgery in that he failed to divulge the substantial risk of injury to a patient undergoing such surgery, that he represented that the surgery was relatively minor in nature, that there would be no aftereffects, and that she would never know that it had been done except for a small scar. The defendant made no effort to treat her with standard nonsurgical methods which included the administration of antithyroid drugs and radioiodine. She asserted that the operation was negligently and unskillfully performed in that the defendant failed to protect each recurrent laryngeal nerve and that the defendant fraudulently concealed the fact of such surgical damage and did not disclose that he irreparably damaged nervous structures during the operation. The petition further states that: "Defendant had knowledge, or the means of knowledge, and concealed the fact of this cutting of nerves, with the intention that plaintiffs, being ignorant of the true state of affairs, would desist from making claim or filing suit on account of defendant's negligence. Further, defendant assured plaintiff Mrs. Smile that her difficulty in voice was only temporary and that over a period of time, without further treatment, her symptoms would disappear. In reliance on such representations and concealment, plaintiffs did desist from making claim or filing suit, and desisted from seeking further medical attention for Mrs. Smile's symptom of hoarseness."

The defendant contends initially, under the holdings in Thatcher v. De Tar, 351 Mo. 603, 173 S.W.2d 760, that the statute of limitations began to run on October 17, 1960, the date on which Mrs. Smile was last treated by the defendant, and that the plaintiffs' causes of action are barred under § 516.140 which insofar as pertinent reads as follows: "Within two years: * * *. All actions against physicians, surgeons * * * for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of, * * *."

The plaintiffs contend that the period of limitations was tolled because the defendant fraudulently concealed her cause of action from her. The defendant's response is that fraudulent concealment does not toll the running of the statute of limitations in the absence of statutory authority and that the plaintiffs have not brought themselves within any such exception in that they have "failed to show that defendant committed any improper act preventing the commencement of this action".

Section 516.280 provides: "If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." In Kauchick v. Williams, Mo., 435 S.W.2d 342, decided concurrently herewith, this court has held that § 516.280 is applicable to the statutory limitations period in malpractice actions. We, therefore, rule in this case that § 516.280 is statutory authority for the proposition that fraudulent concealment of a cause of action is an "improper act" which, if established, will toll the running of limitations under § 516.140. The defendant's contention to the contrary is denied.

The nature and kinds of concealment that will toll the running of statutes of limitations have been considered in Missouri decisions although as might be expected such questions arise rather infrequently. State ex rel. Bell v. Yates, 231 Mo. 276, 132 S.W. 672, cited in Kauchick, involved the tolling of a statute of limitations in an action on the bond of a former treasurer of a state hospital. In explaining the doctrine of fraudulent concealment and its basis, this court stated, 132 S.W. at p. 674: "If there be fraudulent concealments—'any improper act'—preventing the discovery of the facts constituting the cause of action by the exercise of due diligence, then the statute does not begin to run until the fraud is discovered, and the facts constituting the cause of action, theretofore concealed by the fraud and improper acts, come to light. This independent equitable principle of use in the administration of the law of limitations is somewhat shadowed forth in Rev. St.1909, § 1905, [now § 516.280] reading: 'If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be prevented.' See section 1889, Rev.St.1909, [now § 516.120(5)] where the same idea is expressed as controlling actions for fraud."

The Yates case relied on previous decisions including Shelby County v. Bragg, 135 Mo. 291, 36 S.W. 600, 601, which was also a suit for fees retained by a county official, wherein this court stated: "But it is well settled in this state, whether by force of the statute or independent of it, that a fraudulent concealment of a cause of action will delay the operation of the statute of limitation until after discovery of the fraud. * * *. The question is whether the statements made by defendant were such fraudulent concealments of the facts as delayed the operation of the statute until a discovery of the truth. The question is not whether the county, or its agent, the county court, was merely ignorant of the facts constituting the cause of action. Such ignorance will not suspend the operation of the statute unless it can be properly attributed to the fraudulent concealment of the facts by defendant." See also Siler v. Kessinger, Mo. App., 149 S.W.2d 890, 893 [3], and Womack v. Callaway County, Mo., 159 S.W.2d 630, 633 [7].

The Missouri rule relating to the fraudulent concealment of a cause of action as it affects the tolling of statutes of limitations is in keeping with the decisions in a majority of the states. See 34 Am.Jur., Limitation of Actions § 231, p. 188; 54 C.J.S. Limitations of Actions § 206, pp. 219–220; and 80 A.L.R.2d Anno: Statute of Limitations—Malpractice, p. 371. This annotation at page 401 states the general rule as follows: "In many jurisdictions the rule pre-

vails that where the existence of a cause of action is fraudulently concealed by false representations made by the defendant for that purpose, the commencement of the running of the statute of limitations is postponed until the plaintiff discovers, or by exercise of reasonable diligence could have discovered, that he has a cause of action." In 1944, Dean Glenn A. McCleary in a treatise entitled, "Malpractice—When Statute of Limitations Commences in Malpractice Actions", published in 9 Missouri Law Review at pp. 103–104, stated: "But where there is concealment of the fact by the person liable for malpractice so that the injured party is prevented from learning thereof the period of limitations does not start to run until the cause of action is discovered or could have been discovered through reasonable diligence. The confidential relationship between physician and patient imposes a duty to inform the patient of the nature and character of any operation which he has performed on the patient, and disclose any injury inflicted by his negligence in the performance thereof." See also 29 University of Kansas City Law Review at pages 95–97, and 33 Missouri Law Review at pages 204–207. Recent malpractice decisions from other states involving tolling statutes similar to those of Missouri are Hundley v. Martinez, W.Va., 158 S.E.2d 159, 164–166 [4–6], and Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224, 232 [4, 5].

■ The burden is on the plaintiffs to prove the facts necessary to a finding in their favor on the issue of fraudulent concealment of the facts giving rise to the cause of action. Kauchick v. Williams, Mo., 435 S.W.2d 342. In Kauchick the evidence was fully developed at a trial before a ruling was made. The instant case was decided on a motion for summary judgment. Supreme Court Rule 74.04(h), V.A. M.R., provides that: "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by un-

assailable proof to be entitled thereto as a matter of law."

■ The appellate court, as well as the trial court, must view the record on summary judgment in the light most favorable to the party against whom the judgment was rendered. E. O. Dorsch Electric Co. v. Plaza Construction Co., Mo., 413 S.W.2d 167, 169 [2]. Viewed in this light, an inference could reasonably be drawn from the record in this case that the defendant knew that he had severed Mrs. Smile's laryngeal nerves thereby paralyzing her vocal cords, that he intended by his conduct and statements to conceal from her the fact that she had a justiciable claim or cause of action against him by reason thereof, and that his acts were fraudulent. An act is fraudulent when it belongs to or is characterized by fraud. Fraud is defined as an instance or act of trickery or deceit especially when involving misrepresentation; an act of deluding. Webster's Third New International Dictionary.

■ It follows, therefore, that the summary judgment record does not show by unassailable proof that the defendant was entitled to judgment as a matter of law. Wood v. James B. Nutter & Company, Mo., 416 S.W.2d 635, 638 [2]; Robinson v. Bench, Mo., 409 S.W.2d 145, 148 [3]; Cooper v. Finke, Mo., 376 S.W.2d 225, 229 [3, 4]. On the record the trial court erred in sustaining the motion for summary judgment.

Accordingly the judgment is reversed and the cause remanded.

HOLMAN, C. J., HENLEY and DONNELLY, JJ., and ANDERSON, Special Judge, concur.

FINCH, J., concurs in result in separate concurring opinion filed.

EAGER, J., concurs in result and concurs in separate concurring opinion of FINCH, J.

SEILER, J., not sitting.

FINCH, Judge (concurring in result).

In this action plaintiffs allege that Mrs. Smile suffered injuries "as a direct result of the battery committed on the person of plaintiff by the negligent surgery performed by defendant." It is true, as the principal opinion recites, that the petition also alleges that defendant failed to sufficiently inform Mrs. Smile as to the nature and risk of the surgery and made no effort to treat her with standard nonsurgical methods, but recovery on that basis is not sought. These allegations have nothing to do with whether surgery was performed negligently or with the issue presented on this appeal.

Although I incline to the view that plaintiffs' answers to interrogatories, when considered with plaintiffs' petition, entitled the trial court to sustain defendant's motion for summary judgment, and I dissented to a divisional opinion on that basis, I have concluded to concur in result with the principal opinion. I do this on the theory that perhaps the summary judgment record does not show by unassailable proof that defendant was entitled to judgment as a matter of law and that plaintiffs may be able to produce additional evidence at a trial on the merits.

There are portions of the principal opinion with which I do not agree or about which I have doubts, and these I propose to discuss.

In the first place, I do not agree with the conclusion in the principal opinion that "an inference could reasonably be drawn from the record in this case that the defendant knew that he had severed Mrs. Smile's laryngeal nerves thereby paralyzing her vocal cords, that he intended by his conduct and statements to conceal from her the fact that she had a justiciable claim or cause of action against him by reason thereof, and that his acts were fraudulent."

The record on appeal contains only the petition as amended, a request by defendant to plaintiffs for certain admissions (apparently unanswered), interrogatories by defendant to both plaintiffs and their answers thereto, and defendant's motion for summary judgment. This record contains absolutely no evidence that the defendant knew he had severed the laryngeal nerves. The petition alleges that defendant severed these nerves and that defendant had knowledge or the means of knowledge, but these are mere allegations, not proof. Mrs. Smile stated in answer to one interrogatory that when she inquired about her difficulty in speaking, the defendant said it was nothing and to clear her throat each time before speaking, but that statement does not show knowledge on his part, nor is it a basis for inferring that the doctor knew he had cut the laryngeal nerves. No other interrogatory or answer shows knowledge. Therefore, I consider it to be erroneous to conclude that the record here on appeal is sufficient to submit to the jury the question of whether defendant knew that he had severed Mrs. Smile's laryngeal nerves, or that defendant intended to mislead plaintiff or conceal facts from her. It is possible that at a trial she might produce such evidence, but knowledge is not shown nor can it be inferred from the record before us.

In connection with a trial herein, it should be pointed out that proof of actual knowledge on the part of the defendant is necessary before fraudulent misrepresentation under § 516.280, RSMo 1959, V.A.M.S., may be found. Proof that defendant should have known and was negligent in not knowing is insufficient. Actually, this is recognized in the opinion in Kauchick v. Williams, Mo., 435 S.W.2d 342, decided concurrently herewith. In that opinion the court said, 1. c. 349: "Again the difficulty with Mrs. Kauchick's position is that there is no evidence to support the finding that Doctor Williams did know what actually caused her difficulty. He testified that he relied upon the X-ray report that her pelvic

measurement would permit vaginal delivery. *Mrs. Kauchick's expert medical testimony might support a finding that Doctor William's reliance upon the X-rays and failure to make a clinical measurement was not in accord with the generally accepted medical practice in the community at the time. However, that would not establish that Doctor Williams was aware that he had been negligent and that, in telling Mrs. Kauchick that he did not know what caused her difficulty, he was endeavoring to conceal his negligence from her in order to avoid an action for malpractice."* (Emphasis supplied).

The question necessarily is whether the defendant had actual knowledge because only then could he be guilty of fraudulent concealment which could toll the statute under § 516.280. The test is not whether a doctor had the means of knowledge or was negligent in not knowing.

Plaintiffs rely solely on § 516.280 to toll the statute of limitations. I agree with the conclusion of the principal opinion (and with the same conclusion reached in Kauchick v. Williams, Mo., 435 S.W.2d 342, decided concurrently herewith) that § 516.280 is applicable to malpractice actions if the facts are such as to justify its application.[1] However, I am not in agreement with the principal opinion insofar as it seems to hold or imply that mere silence on the part of defendant doctor would toll the statute of limitations on the basis of the provisions of § 516.280.

What is now § 516.280 has been in our statutes a long time. The particular portion thereof with which we are concerned has been construed by this court, although not, so far as I can ascertain, in a malpractice suit. The "improper act" referred to therein has been held to be an act in the nature of a fraud preventing commence-

ment of the action. For example, in Higgins v. Heine Boiler Co., 328 Mo. 493, 41 S.W.2d 565, 573, the court said: "However, this court, in Davis v. Carp, 258 Mo. 686, 698, 167 S.W. 1042, 1045, was required to interpret the meaning of the words 'by any other improper act,' as used in section 1334, Rev.St.1919. We therein ruled: 'So, the "improper act" referred to in the statute must be one in the nature of *a fraud* that would prevent the commencement of the action, in order to bring the act within the statute.'"[2]

In Maynard v. Doe Run Lead Co., 305 Mo. 356, 265 S.W. 94, 99, the court said: "Section 1334, R.S.1919, suspends the running of the statute, where, by some improper conduct, the defendant has prevented the commencement of the action. It might be claimed by the plaintiff that the conduct of the defendants, concealing the true state of affairs from him, prevented his commencing the action, or he might rely upon the equitable doctrine that the statute would not run while fraudulent concealment by defendant of the fact that the plaintiff has a cause of action prevents plaintiff from ascertaining his rights. Whether the statute (Section 1334) or the equitable principle applies, it puts the matter in a different position from what it would be if the statute did not begin to run until the discovery of the fraud. If the action is founded upon fraud, as provided in the last clause of section 1317, the plaintiff must discover the fraud (within 10 years) before the statute begins to run, and it does not matter whether the party who has defrauded him does anything to prevent his discovery or not. *On the other hand, if the cause of action is not founded upon fraud as the basis of the case, the ignorance of his rights would not prevent the statute from running. The statute would not be tolled in such case, unless some act of the party against whom he has his cause of*

---

1. Such a conclusion is advocated in an article by Frederick Davis entitled "Tort Liability and the Statutes of Limitation," 33 Missouri Law Review, 171, 205.

2. Section 1334, Rev.St.1919, referred to in the above quotation, was the same as present § 516.280, RSMo 1959, V.A.M.S.

*action has prevented his discovering the facts."* (Emphasis added).

This court also has held that the act relied upon must be some affirmative act, not mere silence. In Maynard v. Doe Run Lead Co., supra, 265 S.W. 1. c. 99, this court, in discussing the statute of limitations, said: "The mere ignorance of the party complaining, or of the silence of the party complained of, would not amount to actionable concealment." In Shelby County v. Bragg, 135 Mo. 291, 36 S.W. 600, 602, this court, in quoting with approval from Wood v. Carpenter, 101 U.S. 135, 141, 25 L.Ed. 807, said: " 'Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.' "

Plaintiffs' petition claims affirmative fraudulent misrepresentation. If that is shown, including evidence of knowledge on the part of defendant, I agree that the statute of limitations would be tolled. However, plaintiffs also allege concealment and claim that mere silence on the part of the defendant would toll the statute of limitations under § 516.280. The principal opinion seems to hold that such silence will toll the statute if a confidential relationship exists between plaintiff and defendant. With this I do not agree.

I find nothing in the language of § 516.-280 which prescribes a different standard or test for different people. It says nothing about those who occupy a confidential relationship and those who do not. When the legislature desired to prescribe a different period of limitation for physicians in malpractice cases than they provided in other classes of torts, they specifically said so. If they had intended to provide special classifications under § 516.280 and to require affirmative acts as to one and mere silence as to the other, they could and would have said so. For us to write in such a provision constitutes judicial legislation.

Furthermore, to hold that mere silence will toll the statute of limitations under § 516.280 is to provide a discovery rule (conditioned only on proof of knowledge on the part of the doctor), although we recently held in Laughlin v. Forgrave, Mo., 432 S.W.2d 308, decided September 9, 1968, and Yust v. Barnett, Mo., 432 S.W.2d 316, decided September 9, 1968, that the legislature in enacting § 516.140 intended to and did leave out of malpractice cases the discovery rule established in § 516.100. It seems illogical to me for us to hold that the legislature intended by § 516.140 to eliminate the discovery rule set out in § 516.100 and then to turn around and hold that a discovery rule in malpractice cases is established by § 516.280.

It may be that one in a confidential relationship has a duty to speak to those with whom he is shown to have such relationship, and that failure to speak breaches that duty and gives the other party a right based thereon. It does not, however, alter the express provisions of § 516.280 and make that statute mean one thing as to a doctor and something else as to a merchant or banker.

The principal opinion says that the Missouri rule on this subject is in accord with the rule in a majority of the states. I do not find that there is a majority rule which would cause mere silence to toll limitations where the action is one for malpractice against a physician. In 80 A.L.R.2d, Anno: Statute of Limitations—Malpractice, p. 371, it is pointed out at page 407 that, "Some of the authorities apply to malpractice actions the general rule that an affirmative act is necessary as an element of concealment of a cause of action having the effect of tolling limitations." Subsequently, on page 408, it is stated: "On the other hand, other authorities take the view that because of the relationship of trust and confidence existing between a practitioner and his patient and the former's corresponding duty to disclose material information to the latter, mere silence and failure to disclose to the patient the fact of the injury done to him may constitute fraudulent conceal-

ment of a cause of action for malpractice such as will toll the statute of limitations."

Reference also is made in the principal opinion to an article in 9 Missouri Law Review 102 by Dean McCleary. That article discussed Thatcher v. De Tar, 351 Mo. 603, 173 S.W.2d 760, which dealt with the provisions of what is now § 516.140. It neither mentioned or had any relationship to the statutory provision which is now § 516.280. The statement of Dean McCleary quoted in the principal opinion was based on Georgia cases which were cited in the footnote. No Missouri statute or case was cited to support the statement.

The principal opinion also cites the recent cases of Hundley v. Martinez, W.Va., 158 S.E.2d 159, and Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224, as involving tolling statutes similar to Missouri and apparently as authority for the proposition that mere silence should toll the statute in an action between a patient and physician. Actually, it seems to me that neither case supports that position. Hundley was a suit wherein the plaintiff sought to recover for damage to his eye in an operation performed by the defendant. West Virginia had a statutory provision somewhat similar to our § 516.280. In the course of the opinion, the court said, 158 S.E.2d 165: "It has been held by this Court that obstruction by the defendant must be by a positive act; that mere silence will not constitute obstruction sufficient to toll the running of the statute; and that the act which interfered with the plaintiff's rights must be alleged." Subsequently, on the same page, the court said: "The fraudulent concealment, if any, by Doctor Martinez of the injury to the plaintiff's right eye was the result of a positive act, not mere silence."

In Billings, the court referred to various A.L.R. Annotations and a change in philosophy in some recent cases. It pointed out that some states have gone to a more liberalized version of the fraudulent concealment rule. With reference thereto, the court then said, 389 P.2d l. c. 230: "Appellants contend that we should accept the liberalized version of the fraudulent concealment rule. This we are unable to do." Subsequently, the court announced what is purely a discovery rule, without any reference to silence or concealment. The rule announced was this, 389 P.2d l. c. 232: "[W]here a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." Incidentally, I find no reference to an Idaho statute comparable to our § 516.280. The case is not authority for holding that mere silence is a fraudulent act under our statutory provision.

In the final analysis, it seems to me that the question is not what some other state does, particularly where the state has a statute not comparable to our § 516.280, or in some instances has no such statute at all, but rather is a question of what § 516.280 means. I would hold that it applies similarly to all persons and that an affirmative act is necessary to toll the statute.

Finally, I would point out that cases construing this tolling statute require diligence on the part of plaintiff. In Shelby County v. Bragg, supra, 36 S.W. l. c. 602, this court said: "A party cannot avail himself of this exception to the statute where the means of discovering the truth was within his power, and was not used." The court went on to say: " 'There must be reasonable diligence, and the means of knowledge are the same thing, in effect, as knowledge itself.' "