**GENERAL GROCER COMPANY, a corporation, Appellant,**

v.

**Fred W. AHLEMEIER, Fred W. Ahlemeier Company, Oakbrook Dairy Market, Inc., Fred W. Ahlemeier, Kenneth J. Landolt and Bernice M. Paschon, Respondents.**

Nos. 42794, 43169.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 22, 1981.

Gentry, Bryant & Hereford, Stephen M. Hereford, Clayton, for appellant.

Robert C. Ely, J. E. Sigoloff, St. Louis, for respondents.

WEIER, Judge.

We consider consolidated appeals from two judgments of the circuit court. To understand the issues involved, we present a brief account of the procedural history of the case.

General Grocer Company brought suit against Fred W. Ahlemeier, individually, Fred W. Ahlemeier Company, a Missouri corporation, Oakbrook Dairy Market, Inc., a Missouri corporation whose corporate charter had been forfeited, and Fred W. Ahlemeier, Kenneth J. Landolt and Bernice M. Paschon, the last directors and officers of defendant Oakbrook Dairy Market, Inc., as statutory trustees of Oakbrook Dairy Market, Inc. The case was tried on plaintiff's second amended petition. Count I of that petition alleged a cause of action against Fred W. Ahlemeier, personally, based upon an alleged promise to pay General Grocer Company for shipments made to the Oakbrook Dairy Market. A directed verdict was rendered on Count I and no appeal was taken from that ruling. Count II of the petition alleged General Grocer had delivered to defendant Oakbrook Dairy Market merchandise of the value of $34,086.06 during the months of February and March, 1977, for which payment had not been made; that Oakbrook Dairy Market was a subsidiary of the Ahlemeier Company and as such was a conduit or instrumentality of the parent corporation. Judgment was sought against the Ahlemeier Company and the statutory trustees of the defendant Oakbrook Dairy Market, Inc.

The case was tried to a jury on the legal issues. After submission of instructions upon plaintiff's claim and defendant's counterclaim together with special interrogatories on the equitable issue as to whether the Oakbrook Dairy Market was the "alter ego" of the Ahlemeier Company, the jury returned a verdict in favor of plaintiff and against the defendant Oakbrook on plaintiff's petition and denied defendant's counterclaim. It also returned answers to the court's interrogatories as to the equitable issue. The court entered judgment against the defendant on plaintiff's petition but did not enter a judgment at that time with respect to the equitable issue of piercing the corporate veil of Ahlemeier Company. Thereafter the court sustained the defendant Ahlemeier Company's motion for new trial on March 20, 1980, and plaintiff appealed from this order on March 31, 1980. On this same date the court entered a judgment determining that the Ahlemeier Company owned all of the shares of stock of defendant Oakbrook Dairy Market, Inc., as a subsidiary and that Oakbrook was the "alter ego" of the Ahlemeier Company. Any debt of Oakbrook was "held to be the liability of Fred W. Ahlmeier [sic] Company as pertains to Plaintiff, General Grocer Company." To this judgment a motion to set aside was filed by the Ahlemeier Company and on July 2, 1980, the court vacated its order of March 31, 1980. To this action of the court, General Grocer also filed an appeal on July 8, 1980. As previously stated, both appeals were consolidated upon appellant's motion. We turn first to the law case.

When the court sustained the motion of Oakbrook Dairy and its statutory trustees for new trial on plaintiff's cause of action and on its counterclaim, the court assigned as reason therefor that it erred in giving Instruction Nos. 3 and 5. In defendant's motion for new trial, one of the charges of error assigned to Instruction No. 3, the plaintiff's verdict-directing instruction, asserted that the instruction was not supported by the evidence. The motion pointed out that the instruction required the jury to find a verdict in favor of plaintiff and against defendant if the jury determined that between February 3 and March 31, 1977, plaintiff "furnished" to defendant certain grocery, produce and meat products. The evidence, however, did not support this state of facts. The then retail accounting manager of General Grocer testified that the goods were shipped and delivered prior to February 3, 1977. This witness also testified that the statement of the account presented charges made for goods shipped and delivered prior to February 3, 1977. Furthermore, plaintiff's brief on appeal admits that the goods were delivered to de-

fendant prior to February 3, 1977, but urges that they were delivered by other vendors to defendant Oakbrook and that General Grocer paid for them at a later time, and in effect they were therefore furnished by the plaintiff when plaintiff paid the accounts.

■ Instructions must be within the scope of the pleadings and the evidence. *Domijan v. Harp*, 340 S.W.2d 728, 732[4] (Mo.1960); 27 A Mo.Dig., Trial § 250. Any verdict-directing instruction whether on behalf of plaintiff or defendant must be supported by the evidence. *Stotler v. Bollinger*, 501 S.W.2d 558, 560[1] (Mo.App.1973).

■ Instruction No. 3 hypothesized the furnishing of merchandise between February 3 and March 31, 1977. The word "furnished" as used there means to deliver, supply or provide. *See generally Schneider v. Pevely Dairy Co.*, 328 Mo. 301, 40 S.W.2d 647, 650 (1931); Black's Law Dictionary, Revised Fourth Edition, p. 804. The word "furnished" conforms with the plaintiff's theory of its lawsuit expressed in its petition upon which the case was tried wherein it was stated the groceries and the other merchandise were "delivered" to defendant during the months of February and March, 1977. Since it is not supported by the evidence, however, the giving of Instruction No. 3 was error and the court properly ordered a new trial for that reason. *Brassfield v. Sears*, 421 S.W.2d 321, 323[1] (Mo. 1967).

Defendant has also complained of giving Instruction Nos. 3 and 5 because both instructions failed to confine the jury in their deliberations to plaintiff's claim. Defendant pointed out in its after-trial motion that neither instruction made reference to plaintiff's cause of action or defendant's counterclaim in directing a verdict. Defendant maintains that this is a practice which is required by notes on use under MAI 4.01, 17.01, 26.02 and 32.01, 1964 Ed.[1] The instructions here used, defendant points out, were not modeled after those instructions enumerated. Rather, Instruction No. 3 is

the same as MAI 26.03 and is the instruction to be used in a *quantum meruit* submission. Defendant further asserts Instruction No. 5, the damage instruction, is MAI 4.04. The notes on use in MAI under these instructions do not require a reference to the particular claim as is required by the notes on use under those cited by defendant. The problem, therefore, resolves itself into answering the question: Did the use of the instructions without referring them directly to plaintiff's claim by adding the words "on plaintiff's claim for damages" after the first phrase result in confusion so the jury could have mistakenly applied them to the counterclaim? We do not have to address this issue, however, because of our affirmance of the court's order granting a new trial. When the case is re-tried, "packaging" of instructions required under MAI 3rd 2.00 *et seq.* should remove any possible confusion over the application of various instructions to the respective claims. *See also* MAI 3rd Ed., How to Use This Book, Use of Terms Plaintiff and Defendant; Counterclaims, Cross-claims and Other Claims, p. XCVI.

We turn now to the contention of plaintiff that the court erred when it set aside its judgment finding Fred W. Ahlemeier Company to be the alter ego of Oakbrook Dairy Market, Inc. As previously indicated, this judgment was entered by the court on July 31, 1980, after it had ordered a new trial on the jury-tried issues. The theory of plaintiff's claim that Oakbrook Dairy Market, Inc., was acting as the alter ego of Fred W. Ahlemeier Company was advanced in order to seek an equitable remedy to secure the payment of the indebtedness from a solvent defendant. After the court determined that a new trial should be held with respect to the principal cause of action, any reason for retaining the judgment of the court entered on March 31, 1980, on the liability of Fred W. Ahlemeier Company no longer existed.

1. Unless otherwise noted, all references are to MAI, 1964 Ed., the volume in effect when this case was tried.

■■ The relief here sought is similar to that of a creditor's bill wherein a creditor seeks to enforce the payment of debts out of equitable assets which cannot be reached by levy and sale on execution of a judgment established in a suit at law. *See Publicity Bldg. Realty Corporation v. Thomann*, 353 Mo. 493, 183 S.W.2d 69, 72[2] (1944). When a creditor seeks to maintain a creditor's bill, he is required to first reduce his claim to a judgment before he seeks relief in equity. This is for the reason that one who is charged with money indebtedness has the right to have the question of the existence and the amount of the debt determined by jury. Before a conveyance in fraud of a creditor can be set aside, the creditor should first exhaust his remedies at law and establish the indebtedness by judgment. *General American Life Ins. Co. v. Leavenworth*, 347 Mo. 876, 149 S.W.2d 360, 362[2, 3] (1941). *See also Johnson v. Fotie*, 308 S.W.2d 662 (Mo.1958); *Jones v. Davis*, 306 S.W.2d 479 (Mo.1957). The same principles are applicable here and the judgment in equity should be set aside when it is merely in aid of a judgment at law that has previously been set aside.

The order of the trial court granting a new trial on plaintiff's cause of action and the order setting aside the judgment finding Fred W. Ahlemeier Company to be the alter ego of Oakbrook Dairy Market, Inc., are affirmed.

STEWART, P. J., and STEPHAN, J., concur.