Helen **SHOCKLEY**, Successor-Appellant,

Frank Shockley, Plaintiff,

v.

Harry **SANDER**, et al., Defendants-Respondents.

No. 50903.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 25, 1986.

Ted F. Frapolli, St. Louis, for successor-appellant.

Mark E. Goodman, Clayton, for defendants-respondents.

KELLY, Presiding Judge.

Frank Shockley, d/b/a Aalco Barney Company, appealed the judgment dismissing his five count petition against Harry A. Sander and Middlewest Realty, Inc., respondents herein.[1] The petition was dismissed upon motion of respondents asserting that the statute of limitations barred Shockley's claim. The trial court determined that Shockley's suit was not timely filed within the five year period required under § 516.120 RSMo 1978, the applicable statute of limitations. The court held that the untimely filing was not excused be- cause Shockley failed to prove respondents' concealment within the meaning of § 516.-280 RSMo 1978 which precludes the tolling of the statute of limitations "[i]f any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action." We affirm.

In October 1980, Shockley, a plumber, sued Harry A. Sander Realty Company for unpaid plumbing services he had rendered. Although Harry A. Sander, the registered agent for Harry A. Sander Realty Company, was served and filed an answer, Shockley obtained a default judgment on September 1, 1981, for $37,637.14 against the realty company when its pleadings were struck in response to Shockley's motion for sanctions for its failure to answer his interrogatories. This judgment remains unsatisfied, after an execution issued against Harry Sander Realty Company on October 13, 1981, was returned nulla bona.

Shockley then filed another lawsuit October 1, 1981, naming as defendants both Harry A. Sander and Middlewest Realty, Inc., respondents herein, alleging that the Harry A. Sander Realty Company was a subterfuge and alter ego of the two named defendants, and asked that Shockley be allowed to pierce the corporate veil of Harry A. Sander Realty Company so that defendants would be liable to Shockley as the undisclosed principals of Harry A. Sander Realty Company. Defendants' answer alleged the statute of limitations barred Shockley's action because it was not brought within five years from the date Shockley had performed any work. Shockley acknowledged that the action was not brought within a five year period but replied that § 516.280 RSMo 1978 creates an exception where defendants concealed themselves and by their improper acts prevented the commencement of the action against them.

A hearing was held on October 22, 1985, for Shockley to prove concealment or other improper acts by Harry A. Sander and Mid-

---

1. During the pendency of this appeal, plaintiff Frank Shockley died. Upon post-submission filings of suggestion of death and for substitution of party, decedent's wife Helen Shockley was substituted as appellant.

dlewest Realty, Inc. Shockley's evidence included the circuit court file from the earlier default judgment case, various exhibits, and direct testimony by Shockley, his wife, and Sander. The numerous exhibits reflected work orders issued to Shockley, all from "Harry Sander Realty Company" requesting plumbing work, correspondence from various municipal authorities addressed to Harry Sander Realty concerning plumbing that was not in code compliance, and an exhibit listing business dealings between Harry Sander Realty Company and Shockley from mid 1974 through August 17, 1976.

Shockley testified that all documents and work orders he received were on the letterhead of Harry Sander Realty Company or were documents which designated Harry Sander Realty Company as the responsible entity. He further testified that he had never been told he was working for H.A.S. Investments, Inc., the predecessor corporation of respondent Middlewest Realty, Inc. and the apparent property owner of the locations where Shockley had performed his plumbing services; that he had never heard of H.A.S. Investments, Inc. during his years of business with Harry Sander Realty Company; and that he had never received any documents with the names of H.A.S. Investments, Inc. or Middlewest Realty, Inc. A crucial aspect of his testimony, however, was his admission on cross-examination that he supposed he saw checks from H.A.S. Investments, Inc., but that he did not know of the existence of H.A.S. Investments, Inc. prior to initiation of the first lawsuit on October 6, 1980. He added that "any checks from H.A.S. Investments, Inc. would have gone to his bookkeeper (his wife), that he did not handle the checks, and he would probably not see them."

Shockley's wife merely corroborated his testimony that she, not Shockley, handled the checks and payments for the services involved between Harry Sander Realty Company and Shockley.

Shockley also called Harry A. Sander as a witness. Sander testified that he had no work orders or documents sent to Shockley that had a Middlewest Realty or H.A.S. Investments, Inc. letterhead on them and that he had never told Shockley that Shockley was doing business with H.A.S. Investments, Inc. He stated that although all memoranda for services to be rendered were communicated to Shockley on Harry Sander Realty Company letterhead, the requests were actually issued by H.A.S. Investments, Inc. Further, H.A.S. Investments, Inc. paid for all memos, letterheads and supplies of Harry Sander Realty Company and Middlewest Realty, Inc., H.A.S. Investments, Inc.'s successor corporation, paid the franchise tax for Harry Sander Realty Company. While Harry Sander Realty Company had a telephone listing, it never maintained a bank account, never had any employees, never maintained any assets to offset its debts, and had never done any business. Sander concluded his testimony by stating that payments made to Shockley for plumbing service were issued on checks by H.A.S. Investments, Inc. These checks, marked as exhibits, were never received into evidence.

Based on the foregoing evidence, the trial court concluded no concealment within the meaning of § 516.280 RSMo 1978 had been established to excuse Shockley's failure to file his action against respondent within the statute of limitations.

■ Shockley's sole point on appeal claims the trial court erred in finding that the evidence did not show a concealment or improper acts by respondents preventing the timely filing of his action prior to the running of the statute of limitations. Shockley's argument focuses on the lack of clear definition between the corporations' identities, as well as the multitude of exhibits documenting appellant's bona fide belief that he performed plumbing services at the behest of Harry Sander Realty Company, and not H.A.S. Investments, Inc., or its successor Middlewest Realty, Inc. From this evidence, Shockley infers deliberate action by Harry A. Sander to conceal the identity of the real parties in interest.

Respondent summarily dismisses the argument of Shockley. Respondent high-

lights evidence that Shockley received checks for his plumbing services from H.A.S. Investments, Inc., refuting any possibility that Harry A. Sander individually or H.A.S. Investments, Inc. affirmatively concealed from Shockley his cause of action against either of them. Respondents conclude Shockley knew, or had the means available to discover, that they, and not Harry A. Sander Realty Company, were the proper party defendants.

However dishonorable or distasteful we find the unsavory business practices engaged in by respondents, we must agree with respondents that their actions do not constitute "absconding or concealing" or "any other improper act" which "prevent the commencement of an action" within the meaning of § 516.280 to toll the statute of limitations.

 Section 516.280 RSMo 1978 is statutory authority for the proposition that fraudulently concealing a cause of action tolls the statute of limitation. *Smile v. Lawson*, 435 S.W.2d 325, 327 (Mo. banc 1968). Respondents here, however, did not "prevent the commencement of an action." Shockley was aware of his action for breach of contract at the onset but named the wrong party defendant. Notwithstanding the error, he could have sought the identity of the proper party defendant through discovery. We have no reason to believe diligent, prompt discovery procedures in this case would not have uncovered the proper party defendant within the limitations period. *Accord Klippel v. Watkins*, 667 S.W.2d 28, 31 N. 4 (Mo.App.1984). In this case we follow, as did *Klippel*, the general rule in other jurisdictions that where one fraudulently conceals one's identity as a defendant, rather than concealing the existence of the cause of action itself, the statute of limitations is not tolled. 667 S.W.2d at 31.

We sympathize with Shockley's plight since our review of the record reveals the procedural manipulations engaged in by defendant to thwart discovery of the proper defendant. The named defendant protracted discovery by agreeing to comply with discovery and then failing to do so; measures designed to run the clock against Shockley's action against the proper defendants. While Shockley's recourse against the proper party defendants is barred by the statute of limitations in this separate legal action, he may have recourse by way of a creditor's bill, a rarely used but flexible equitable remedy, against these defendants to enforce execution of his judgment in the original action. *See e.g. General Grocer Co. v. Ahlemeier*, 627 S.W.2d 61, 64 [4, 5] (Mo.App.1981). *See also* Jones, "The Uses of Equity: Creditors' Bills," 16 J.Mo.Bar 182, 186 (1960).

Judgment affirmed.

CRIST and STEPHAN, JJ., concur.